**Walter CULP, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 83–1523.**

District of Columbia Court of Appeals.

Submitted Dec. 14, 1984.

Decided Jan. 18, 1985.

Corinne Schultz, Public Defender Service, Washington, D.C. with whom James Klein, and Mark S. Carlin, Public Defender Service, Washington, D.C., were on brief, for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., Washington, D.C. with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before FERREN, TERRY and ROGERS, Associate Judges.

FERREN, Associate Judge:

Appellant was charged with unlawful entry, D.C.Code § 22–3102 (1981), and unlawful possession of heroin, *id.*, § 33–541(d) (Supp.1984). A jury found him guilty of possessing heroin but was unable to reach a verdict on the charge of unlawful entry. The court sentenced appellant to one year's incarceration but suspended execution of the sentence and placed appellant on probation for two years.

On appeal, appellant challenges the trial court's denial of his pretrial motion to suppress evidence. He contends that his arrest was unsupported by probable cause and thus the subsequent search of his person, during which the arresting officers found several packets of heroin, was constitutionally invalid. We conclude that there was probable cause to arrest and that the subsequent search was accordingly valid as incident to a lawful arrest.

## I.

Officers Roeder and Jeannott, patrolling 15th Place, S.E., on motorcycles, spotted three men standing inside a dilapidated row house in the 3200 block. The house, managed by the National Capital Housing Authority (NCHA), had been vacant for some time. Appellant and his companions were standing in the kitchen at the rear of the building when the officers first saw them. As the officers approached, the men attempted to leave through the back door. The officers stopped them at the doorway, escorted them inside, and asked what they were doing there. Appellant could not explain his presence. The officers then frisked the men and found three plastic bags containing heroin in appellant's pockets.

Appellant maintains that his arrest, whether it occurred before or after the officers questioned him, lacked probable cause, and that the search was therefore illegal.[1] Specifically, appellant argues that because the house was obviously vacant and in a state of disrepair (1) the officers could not reasonably have concluded that appellant entered the premises without lawful authority, and (2) appellant could not have known he was entering the house against the will of the lawful occupant. *See* Criminal Jury Instructions for the District of Columbia, No. 4.44 (3d ed. 1978). We disagree.

## II.

At the suppression hearing before trial, Officer Roeder, one of the arresting officers, testified that many of the windows of the row house had been broken, the rear door leading into the kitchen was missing, and the inside of the house was a "shambles." He further testified that NCHA had boarded up all the windows and doors and had placed a "no trespassing" sign in the front. He added that, from time to time, vandals had removed the boards and the sign but that whenever NCHA was notified of this, it replaced them. Officer Roeder also testified that NCHA, concerned about these frequent episodes of vandalism, had notified the police that the property was unoccupied and had requested the police to pay "special attention" to its unoccupied properties in the area in an effort to pre-

---

1. The trial court held a hearing on appellant's motion to suppress tangible evidence and concluded that the arrest occurred only after the officers had questioned the men and received unsatisfactory answers. The court nonetheless concluded that the officers had probable cause to arrest before searching appellant and thus that the search was incident to a lawful arrest.

vent continued damage or trespass. Officer Roeder recalled that on the day of appellant's arrest, the "no trespassing" sign was up, and some windows, primarily on the front and sides of the house, were boarded up.

At the conclusion of the hearing, the court denied appellant's motion, concluding that the officers had probable cause to arrest appellant for unlawful entry before the search occurred. In reaching this determination, the court relied in part on Officer Roeder's testimony about the boards and "no trespassing" sign, as well as on appellant's failure to offer a satisfactory explanation of his presence there.

At trial the same day, Officer Roeder testified again regarding the appearance of the premises at the time of appellant's arrest. His testimony this time was somewhat equivocal. Although he again stated that "several windows ... were boarded up," he could not recall whether the "no trespassing" sign was there or not.

Appellant asked the court to reconsider its denial of the suppression motion, pointing out that Officer Roeder's testimony at trial had differed from his testimony at the earlier hearing. Specifically, appellant argued that in the absence of a "no trespassing" sign, he could not know that he was entering the house against the will of NCHA. The court declined to alter its ruling, concluding that even if there had been no sign, the officers had probable cause to arrest appellant "given the boarding-up and what-have-you."

### III.

■ In prosecuting a charge of unlawful entry, the government must prove that: (1) the accused entered or attempted to enter public or private premises or property; (2) he did so without lawful authority; (3) he did so against the express will of the lawful occupant or owner; and (4) general intent to enter. *See* Criminal Jury Instructions for the District of Columbia, No. 4.44.[2]

■ The arresting officers observed appellant inside the premises. There is no question that appellant "entered" the building. Moreover, it is undisputed that appellant did so without lawful authority. This case, therefore, turns on the third and fourth criteria.

This court has recognized that "innocent entry upon unmarked or ambiguously marked premises may constitute a defense to a charge of unlawful entry." *Jackson v. United States*, 357 A.2d 409, 411 (D.C. 1976). Such a defense, however, "must have some reasonable basis." *Id.; Gaetano v. United States*, 406 A.2d 1291, 1294 (D.C.1979) ("reasonable belief" of right to enter "must be based in the pure indicia of innocence"). We have not previously had occasion to determine whether probable cause to arrest for unlawful entry exists in this factual context. In *Keith v. United States*, 232 A.2d 92 (D.C.1967), we confronted similar circumstances but found it unnecessary to reach appellant's challenge to the sufficiency of proof relating to the charge of unlawful entry. *Id.* at 94.[3] We have, however, concluded there was sufficient ground for a legal arrest when an officer observed a man inside a building which the officer knew was "usually kept locked and the public was not invited to enter." *Best v. United States*, 237 A.2d 825, 826, 827 (D.C.1968). There was probable cause to arrest "because appellant was

---

**2.** D.C.Code § 22–3102 (1981) provides in relevant part:

Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof ... shall be deemed guilty of a misdemeanor....

**3.** In *Keith*, police officers observed appellants walk into an alley near the rear of an empty building, which was posted "Vacant and Condemned." The back door to the building had been removed. The officers entered the building, heard voices and movements and found appellants upstairs surrounded by drug paraphernalia. 232 A.2d at 94. Appellants were charged with unlawful entry as well as possession of narcotics. *Id.* at 93.

committing the crime of unlawful entry in the police officer's presence," *id.* at 827, and thus "the right to search appellant naturally followed." *Id.*[4]

 This case differs from *Best* in that the house which appellant Culp entered arguably appeared from the rear (appellant's point of entry) to be abandoned. Nonetheless, we conclude that there were sufficient indications of efforts by NCHA to protect the property against intruders that the officers could reasonably conclude that appellant knowingly entered "against the will of ... the person lawfully in charge," *see supra* note 2, thus meeting the last two criteria for unlawful entry. Officer Roeder testified, and the trial court found, that NCHA had made continuous and diligent efforts to board up the house, and that at the time appellant entered, at least some of the windows were boarded over. Although these boarded windows may all have been on the sides or front of the house, appellant should have been expected, at a minimum, to inspect all sides of the house before assuming the premises were abandoned. Moreover, while there may have been no sign forbidding entry, the absence of a "no trespassing" sign alone does not suggest that appellant was privileged to enter a private dwelling. *McGloin v. United States*, 232 A.2d 90, 91 (D.C.1967).

 We therefore conclude that, where, as here, an officer observes a person inside a vacant building, the officer has reason to believe that person does not belong there, and the property itself reveals indications of a continued claim of possession by the owner or manager, there is probable cause to arrest for unlawful entry. Because the officers had probable cause to arrest appellant, the subsequent search of his person, revealing heroin, was valid as incident to a lawful arrest. *Best,* 237 A.2d at 827. The trial court ruled correctly in denying appellant's motion to suppress.

*Affirmed.*

---

4. We have also recognized that the arresting officers' knowledge that the property is vacant and closed to the public is material to a determination of probable cause. *Jones v. United States,* 282 A.2d 561, 563 (D.C.1971). Here, NCHA's request that the police keep a special watch over the vacant property "armed" the police "with the knowledge that no one had the [manager's] permission to [enter]." *Id.*