Anthony Joseph **ARTISST**, Appellant,

v.

**UNITED STATES of America**, Appellee.

No. 87–536.

District of Columbia Court of Appeals.

Submitted Dec. 5, 1988.

Decided Feb. 17, 1989.

Williams, a student in Loyola Hall, to inquire about soccer equipment.

Donald W. Whitehead, for appellant.

William M. Blier, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., were on the brief, for appellee.

Before MACK, NEWMAN and FERREN, Associate Judges.

MACK, Associate Judge:

Appellant Anthony Joseph Artisst challenges his conviction, after a trial by jury, of unlawful entry. He contends that the government presented insufficient evidence to sustain the conviction and that he was denied a fair trial because a juror, on voir dire, failed to disclose that she knew him. We find that the evidence was sufficient to support the conviction, but that the trial court erred in failing to pursue appellant's suggestions at trial, and his allegations after trial, that a juror had failed to disclose her acquaintance with him. Accordingly, we remand for a post-trial hearing on the issue of alleged juror bias.

I

On February 3, 1987, at 8:00 a.m., a Georgetown University employee observed appellant, whom he did not recognize as a student, behaving suspiciously inside Loyola Hall, a university residence facility. Loyola Hall is a secured building inaccessible without a Georgetown identification card. A prominently posted sign near the front door warns visitors that they must present such identification to a security guard before entering. The guard is stationed at the front door, and the rear door is locked. Under normal circumstances, an intruder cannot gain authorized access to and move about the building unescorted. The employee therefore reported appellant's presence to University Security. When confronted by a security officer, appellant said he was seeking William

Appellant argues, in this court, that this evidence was insufficient to show unlawful entry. He contends that for entry to be unlawful, it must be against the express will of the lawful occupant or person in legal possession of the property. *Culp v. United States*, 486 A.2d 1174, 1176 (D.C.1985); D.C.Code § 22–3102 (1981). However in order to be express, the will of the person in legal possession need not be oral; "it may be expressed by sign." *Bowman v. United States*, 212 A.2d 610, 611 (D.C.1965). In this case, Georgetown expressed its will by prominently posting a sign directing persons seeking entry to Loyola Hall to present Georgetown identification cards to the security guard posted at the entrance. While appellant presented the expert testimony of a hired investigator that it was possible to enter Loyola Hall without noticing the sign, the jury had the "prerogative of determining credibility, weighing the evidence, and drawing reasonable inferences of fact." *Glascoe v. United States*, 514 A.2d 455, 457 (D.C. 1986); *Boyd v. United States*, 473 A.2d 828, 832 (D.C.1984). In finding appellant guilty, the jury discredited his expert's testimony, and we may not disturb its finding unless there was no evidence, looked upon in the light most favorable to the government, from which a reasonable juror could infer guilt beyond a reasonable doubt. *Stack v. United States*, 519 A.2d 147, 159–60 (D.C.1986). Here, the government's evidence was unquestionably sufficient to convince a reasonable juror that Georgetown had expressly warned intruders away from its property.

Appellant also contends that the government failed to prove the criminal intent necessary to obtain a conviction for unlawful entry. When questioned, appellant offered the innocent explanation that he had entered Loyola Hall to inquire about purchasing soccer equipment from one of the residents, William Williams. Williams testified at trial that he did not know appellant and was not selling equipment. However, the validity of this excuse is irrele-

**330**

vant; appellant has not been charged with attempted burglary. The only state of mind that the government must prove is appellant's general intent to be on the premises contrary to the will of the lawful owner. *Culp, supra,* 486 A.2d at 1176. Evidence rebutting a further intent to commit an unlawful act goes beyond the scope of the charged offense. By satisfying the jury that appellant entered Loyola Hall in contravention of a prominently posted warning, the government has demonstrated appellant's intention to be on the premises contrary to Georgetown's express will.[1]

## II

In his second argument, appellant contends that he was denied a fair trial because one juror failed, on voir dire, to disclose her acquaintance with him. The record shows that after voir dire and the swearing of the jury, appellant suggested to the court, through counsel, that he might know one of the jurors, but could not identify her by name. The court repeated its request to the jurors that they disclose any acquaintance with appellant. When none of the jurors answered, the trial proceeded.[2] Later, after the jury announced its verdict, appellant realized that the juror was the sister of a high school classmate, and that he had had unpleasant relations with her in the past. He therefore wrote two letters to the trial court stating the nature of the alleged relationship. In the second letter, appellant specifically wrote, "Please take this letter as a 'Pro-se' motion of dismissal on the grounds of a 'Tainted Jury.'" The trial court responded by instructing appellant's counsel to act on his client's allegation, if at all, by formal motion. Counsel filed no motion, and the court proceeded to sentence appellant to one hundred sixty days in prison.

▓▓▓ In determining whether there was juror infirmity and what procedures and remedies to apply, we must first determine when the alleged infirmity was discovered and when the trial court was notified of it. Each party is under a duty to report the incompetency of any juror upon discovery. *Cowden v. Washington Metropolitan Area Transit Authority,* 423 A.2d 936, 938 (D.C.1980). Different procedures and remedies are required for handling an incompetency discovered after trial than for that discovered during trial. Thus, in *Shannon & Luchs Management Co. v. Roberts,* 447 A.2d 37, 41 (D.C.1982), we held that the appropriate procedure for dealing with an allegation of juror bias discovered after trial is a hearing "in which the defendant has the opportunity to prove actual bias." The proper remedy upon a showing of prejudice is a new trial. *Cowden, supra,* 423 A.2d at 938; *Marvins Credit, Inc. v. Steward,* 133 A.2d 473, 476 (D.C.1957).[3] Where it is alleged after trial

---

1. Nor can appellant credibly assert that this testimony showed that he had entered with the permission of a lawful occupant, Mr. Williams, since the latter testified that he had no soccer equipment for sale and did not know appellant.

2. The trial transcript reads as follows:

 MR. SHANNON [Counsel for Appellant, at sidebar]: Mr. Artisst tells me he may know juror number 1341, juror number eleven. He says he may know the brother.
 THE COURT: I don't care if he knows the brother.
 MR. SHANNON: I just mentioned it to the Court. I am telling you what he told me. He didn't want to have someone on the jury that did know him. Maybe there is a problem with that.
 THE COURT: I am going to ask whether any juror knows this defendant. If nobody responds, that is it.

 \* \* \* \* \* \*

THE COURT [to the jury]: Before I excuse you for lunch, there is one final question I have for you. Does anybody on this jury—take a look at Mr. Artisst, please—does anybody on this jury know Mr. Artisst? If you do, raise your hand. All right. You do not. Thank you very much.
Trial Transcript at 32–33.

3. We held in *Cowden* that, because of the difficulty of identifying bias, we would grant relief without a showing of prejudice. 423 A.2d at 938. Following the Supreme Court's opinion in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), we have since held that defendant bears the burden of proving actual bias. *Shannon & Luchs, supra,* 447 A.2d at 41. Although this court does not overrule its own precedent except when sitting en banc, *see M.A. P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), we are constrained to follow the rule in *Shannon & Luchs* despite our having refrained in that case from resolving the ambiguous relation between

that a juror failed to answer a question correctly on voir dire, the court may therefore properly uphold the verdict or order a new trial upon concluding a post-trial hearing to evaluate the materiality of the undisclosed information and the truthfulness of the juror's voir dire answers. *Shannon & Luchs, supra,* 447 A.2d at 43. If it finds that the nondisclosure of material information was innocent or inadvertent, the decision whether to grant a new trial is within the court's discretion. *Id.* The relevant test is whether the juror was actually prejudiced against appellant by virtue of the acquaintance. *Id.* at 41. On the other hand, we have not addressed the proper procedure and remedy for a juror infirmity discovered and alleged during trial. However, under such circumstances, courts have generally found it appropriate to reopen voir dire to determine whether any of the jurors was actually biased, and upon a showing of such bias, to unseat the prejudiced juror in favor of an alternate.[4]

■■■ To invoke either procedure, appellant must show that he met the burden of notifying the trial court of the infirmity, whether during or after trial. *Cowden, supra,* 423 A.2d at 938 (D.C.1980). The question here becomes whether appellant did enough to notify the court of the juror's alleged infirmity. Certainly, appellant tried on two distinct occasions to notify the trial court of possible prejudice:

first, during the trial, when he stated his suspicion that the juror knew him; and then, after the verdict, when he articulated the exact nature of the alleged relationship by pro se motion. Since he first questioned the juror's impartiality only after the jury had been impaneled, appellant could no longer use a peremptory challenge. He therefore pursued the only remedy then available by bringing the matter to the court's attention. However, the trial court did nothing more than ask the jury, for a second time, whether any juror knew appellant, and when no juror made an affirmative answer, it proceeded with the trial. We think that the trial court was required to do more. Nothing in the case law requires that a defendant identify a challenged juror by name in order to trigger the requirement of a hearing, and given the fundamental nature of the right to trial by a fair and impartial jury, we hold that the court was under an obligation to investigate the possibility of juror prejudice by more than a perfunctory poll of the jury.[5] The injunctions of the Sixth Amendment require diligent scrutiny to protect the defendant from juror bias. Moreover, the case law nowhere requires that such notification take the form of a formal motion, and we believe that appellant's expression of concern was sufficient to notify the court duly of possible prejudice, requiring a further inquiry.[6]

our holding there and in *Cowden. Shannon & Luchs, supra,* 447 A.2d at 42–43.

4. *See, e.g., People v. Anglin,* 6 Mich.App. 666, 150 N.W.2d 532, 537 (1967) (absent an act of manifest bias, court must conduct investigation when allegation is made during trial to determine whether juror was prejudiced); *United States v. Fay,* 238 F.Supp. 1005, 1007 (S.D.N.Y.1965) (juror-initiated communication with counsel, if discovered during trial, would require inquiry regarding juror's continued impartiality) (dictum); *Firestone v. Freiling,* 188 N.E.2d 91, 94 (Ohio 1963) (remedy for juror infirmity reported during trial is seating of alternate juror); *cf. Smith v. Phillips, supra,* 455 U.S. at 218 n. 8, 102 S.Ct. at 946 n. 8 (assuming, arguendo, the adequacy of hearing and determination to replace juror during trial for bias).

5. Here, for example, because appellant indicated that he might know one of the jurors through her brother, the court could have deter-

mined the context in which appellant knew the juror or her brother. It could have inquired of the individual jurors whether any of them had a brother and, if so, whether that brother fit within the context indicated by appellant. Further inquiry might then have been prompted by the answers given to these questions.

6. The court noted in *Cowden, supra,* 423 A.2d at 938, "that *each party* has an obligation to report the incompetency of any juror upon discovery" in connection with the determination whether a new trial is warranted (emphasis supplied). It would certainly be anomalous, however, to require the party that would suffer detriment from the resulting order to notify the court of the prejudice by formal motion. Rather than obliging that party to move for a mistrial or the impaneling of an alternate, the court must have intended to place opposing counsel, as an officer of the court, under an obligation to report irregularities, regardless of the particular interests of the parties.

■ Even if appellant had not succeeded in properly informing the court of the infirmity during trial, however, there can be no doubt that he met this burden subsequently. Thus appellant claims that he later realized the exact nature of the relationship he had only suspected earlier, and immediately notified the court by sending it two letters after the verdict was announced and before sentencing. The postscript to the second letter contained appellant's request that it be treated as a pro se motion to dismiss. This second letter clearly put the court on notice of appellant's doubts about the juror. While the court was not thereby required to dismiss the charge, as appellant requested, it was required under *Shannon & Luchs, supra,* 447 A.2d at 41, to hold a hearing to determine whether prejudice existed warranting a new trial. The court's instruction to appellant's counsel to file a formal motion if appellant wished to pursue the matter did not dispose of the pro se motion. The filing of the motion itself was an indication of appellant's desire to pursue the matter. It was therefore error for the court to proceed to sentencing with appellant's pro se motion still pending.

■ Although the trial court erred in summarily treating serious allegations about concerns essential to a fair trial, the errors may be cured by a single post-trial hearing to determine whether the juror knew appellant, whether any failure to answer this question was deliberate or unintentional, and whether appellant has been prejudiced as a result. *Id.*[7] Outright reversal is therefore unnecessary. Since appellant was entitled to a hearing and none was granted, we remand the case so that such a hearing may be held. The trial court may proceed in a manner consistent with its findings.

*So ordered.*

---

**7.** In *Smith v. Phillips, supra,* 455 U.S. at 218 n. 8, 102 S.Ct. at 946 n. 8, the Supreme Court noted that a post-trial hearing would be sufficient to cure the error of failing to hold a proper hear- ing to determine whether to seat an alternate juror during trial, assuming, *arguendo,* that such a hearing was necessary.