*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

### Nos. 11-CM-1154 & 12-CO-874

ADAM JARAMILLO ORTBERG, APPELLANT

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the District of Columbia
(CMD-3865-11)

(Hon. Marisa J. Demeo, Trial Judge)

(Argued October 16, 2013                    Decided December 17, 2013)

*William Francis Xavier Becker*, for appellant.

*Sharon Sprague*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, *Roy W. McLeese III*, Assistant United States Attorney at the time the brief was filed, and *Brandon Long* and *Ephraim (Fry) Wernick*, Assistant United States Attorneys, were on the brief for appellee.

*Jeffrey L. Light*, for *amicus curiae* Defending Animal Rights Today & Tomorrow, in support of appellant.

Before BECKWITH and EASTERLY, *Associate Judges*, and PRYOR, *Senior Judge*.

EASTERLY, *Associate Judge*:    Adam Jaramillo Ortberg challenges the

sufficiency of the evidence to sustain his conviction under D.C. Code § 22-3302

(a) (2012 Repl.) for unlawful entry of "any private dwelling, building, or other property" or part thereof. Mr. Ortberg admits he entered a room at the W Hotel, "Studio One," that was being used for an invitation-only fundraiser for a member of the United States House of Representatives, and he admits that he did so to engage in protest activity. But, Mr. Ortberg asserts, his entry was at most "opportunistic" and was not "clearly 'unlawful,'" because Studio One was not clearly closed off to members of the public who might be in the lobby of the W Hotel. Thus, he appears to argue that the government failed either to prove that he had the requisite mental state to commit unlawful entry or to disprove his bona fide belief in the lawfulness of his actions.

The District's crime of unlawful entry, D.C. Code § 22-3302 (a)(1), "prohibits the act of entering or remaining upon any property when such conduct is both without legal authority and against the expressed will of the person lawfully in charge of the premises." *Leiss v. United States*, 364 A.2d 803, 806 (D.C. 1976). For the crime of unlawful entry based on the entry (as distinct from the refusal to leave), we have repeatedly said that only general intent is required. Instead of looking to our case law, however, the trial court looked to the current jury instruction to frame the elements and to determine that the government had met its burden of proof. *See* Criminal Jury Instructions for the District of Columbia, No.

5.401 (5th ed. rev. 2013). This instruction does not include any reference to "general intent." Instead it more precisely identifies the culpable mental states for the elements that comprise unlawful entry: With respect to the element of entry, the government must prove that a defendant purposefully and voluntarily entered the property or private space. But with respect to the element that the entry be against the will of the lawful occupant, the government need only prove that the defendant "knew or should have known" that his entry was unwanted. In other words, the government need not, as Mr. Ortberg suggests, prove that a defendant purposefully sought to defy the will of the lawful occupant or to violate the law. With this opinion, we endorse this jury instruction, and applying its framework in this case, we hold that there was ample evidence to support Mr. Ortberg's guilt.

## I.    Facts

The relevant facts are quickly summarized. On March 2, 2011, appellant Adam Jaramillo Ortberg walked into a fundraising event for a United States Congressman which was being held inside of an event space at the W Hotel called "Studio One." Mr. Ortberg entered Studio One through an exit or service door, having "walked right by" a registration desk manned by as many as three people

handing out badges for the event.[1] A sign outside of Studio One identified the event. Once inside the reception, Mr. Ortberg was approached by Kyung Quinn, a banquet server at the W Hotel, who noticed that Mr. Ortberg was not wearing a name tag. Ms. Quinn asked Mr. Ortberg whether he had a badge. Mr. Ortberg, who testified in his own defense, admitted that he told an untruth in response and that he represented to Ms. Quinn that he did have a badge "somewhere," but he "needed to look for it." Mr. Ortberg also asked Ms. Quinn whether he was in the correct room for the fundraiser. Ms. Quinn ultimately requested that Mr. Ortberg sign in at the registration desk or, as Mr. Ortberg characterized it in his testimony, "[s]he asked me to go talk to the badge checker." Mr. Ortberg then began his planned protest. He held up a sign that he had hidden under his suit jacket, tried to distribute flyers, and yelled an educational message about his cause.[2] When security asked Mr. Ortberg to leave, he complied, although he continued his verbal protest as he left the building.

---

[1] The director of banquets at the hotel, Deacon Colarusso, testified that the three gentlemen at the registration table appeared to be "on a bit of a rotation" and that at times one or two of them "were kind of mingling in through the party," but he never saw the table unattended.

[2] Mr. Ortberg testified that he was "part of a grassroots protest organization in the District of Columbia" called "Defending Animal Rights Today and Tomorrow."

## II.    Analysis

### A. Elements of Unlawful Entry

We review a challenge to the sufficiency of the evidence de novo. *Nero v. United States*, 73 A.3d 153, 157 (D.C. 2013). But before we can assess whether the government presented sufficient evidence to sustain Mr. Ortberg's conviction for unlawful entry in this case, we must understand the elements of the offense. Mr. Ortberg argues that the government failed to "establish the requisite criminal intent as to his initial entry" into Studio One because it failed to prove that he knew he was prohibited from moving from the publicly accessible lobby of the W Hotel into the restricted event space of Studio One. His attack on the sufficiency of the evidence in this case thus appears to turn on whether the government proved that he knowingly or deliberately defied the wishes of the organizers of the event in Studio One or willfully violated the law. The preliminary question before us is whether the law requires the government to present such proof. We conclude it does not.

D.C. Code § 22-3302 (a)(1) provides, in relevant part:

> Any person who, without lawful authority, shall enter, or attempt to enter, any private dwelling, building, or other

property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, . . . shall be deemed guilty of a misdemeanor.[3]

Our case law distilling the elements of this crime has set them out in a variety of ways,[4] but it is clear at the least that the government must prove (1) entry that is (2)

---

[3] The relevant language of the statute setting forth the elements of the crime reads much as it did when it was first enacted in 1901. Recent changes have no bearing on this case. In 2009, § 22-3302 was divided into two subsections, distinguishing between unlawful entry of a public building and unlawful entry of a private building. *See* Omnibus Public Safety and Justice Amendment Act of 2009, D.C. Law 18-88, § 215, 56 D.C. Reg. 7413 (Dec. 10, 2009). In doing so, the Omnibus Public Safety and Justice Amendment Act of 2009 made unlawful entry of a private building a non-jury demandable offense (by decreasing the potential term of imprisonment for 180 days) while unlawful entry of a public building remained jury demandable (the potential prison term was maintained at 6 months). The Comment to the jury instruction on unlawful entry contemplates a scenario in which the nature of the building is contested. Criminal Jury Instructions, No. 5.401 cmt ("If the nature of the building is in issue, the instruction may need to be modified."). However, the private nature of the W Hotel is not contested.

In 2013, this statute was amended to clarify the amount a defendant could be fined at sentencing. *See* Criminal Fine Proportionality Amendment Act of 2012, D.C. Law 19-317, § 201 (h), 60 D.C. Reg. 2064 (February 22, 2013). But this amendment likewise does not affect our analysis.

[4] *See, e.g.*, *Shelton v. United States*, 505 A.2d 767, 769 (D.C. 1986) ("The offense of unlawful entry, on the other hand, is committed when a person invades property without lawful authority and against the will of the occupant."); *Culp v. United States*, 486 A.2d 1174, 1176 (D.C. 1985) ("In prosecuting a charge of unlawful entry, the government must prove that: (1) the accused entered or attempted to enter public or private premises or property; (2) he did so without lawful authority; (3) he did so against the express will of the lawful occupant or owner; and (4) general intent to enter." (citing Criminal Jury Instructions for the District of Columbia, No. 4.44)); *Carson v. United States*, 419 A.2d 996, 998 (D.C. 1980) (noting that "'[the statute] prohibits the act of entering or remaining upon

(continued…)

unauthorized — because it is without lawful authority[5] and against the will of owner or lawful occupant.

What is less clear is the mental state or culpable state of mind that must be proved. The statute does not expressly address this subject. But "where 'a criminal statute is silent on the question of mens rea, it is ordinarily subject to a presumption requiring a culpable mental state unless it is clear the legislature intended to create a strict liability offense." *Conley v. United States*, No. 11-CF-589, slip op. at 43 n.91 (D.C. Sept. 26, 2013) (quoting *Santos v. District of Columbia*, 940 A.2d 113, 116-17 (D.C. 2007)). The legislature has not signaled its intent to impose strict liability for the offense of unlawful entry. And while we have no legislative history on this provision, we have decades of case law interpreting this provision.

---

(…continued)
any property when such conduct is *both* without legal authority *and* against the expressed will of the person lawfully in charge of the premises'" (quoting *Leiss*, 364 A.2d at 806), and referring to "both elements of the crime").

[5] Although there is little case law addressing the meaning of "without lawful authority," *see, e.g.*, *United States v. Thomas*, 444 F.2d 919, 926 (D.C. Cir. 1971), it appears this element would protect from prosecution for unlawful entry emergency responders, members of the law enforcement community entering pursuant to a warrant, or individuals otherwise authorized by law to enter certain properties. Mr. Ortberg has never asserted that he had some official authority to enter Studio One, and thus this element requires little discussion in this case.

Turning to this case law, it has been long understood that the "only state of mind that the government must prove is appellant's general intent to be on the premises contrary to the will of the lawful owner." *Artisst v. United States*, 554 A.2d 327, 330 (D.C. 1989); *see also Culp v. United States*, 486 A.2d 1174, 1176 (D.C. 1985) (explaining that the government need only establish "general intent" to enter). But what is meant by this "venerable" common law classification "has been the source of a good deal of confusion." *United States v. Bailey*, 444 U.S. 394, 403 (1980); *see also Perry v. United States*, 36 A.3d 799, 809 n. 18 (D.C. 2011) (noting that categorizations of general and specific intent "can be too vague or misleading to be dispositive or even helpful"). Moreover, the statement that a crime as a whole requires proof of "general intent" fails to distinguish between elements of the crime, to which different mental states may apply. "[C]lear analysis requires that the question of the kind of culpability required to establish the commission of an offense be faced separately with respect to each material element of the crime[.]" *Bailey*, 444 U.S. at 406 (citation omitted).

Even though our prior discussions of mental state have lacked some precision, we are nonetheless able to look to our precedent to determine that the mental states for entry and for doing so "against the will" of the lawful occupant are both clearly discernible and distinct. To begin with, our cases make clear that

the physical act of entry must be purposeful and voluntary — not accidental or mistaken. *See Kozlovska v. United States*, 30 A.3d 799, 801 (D.C. 2011) (noting that the trial court found, inter alia, that "appellant entered the property voluntarily and on purpose, not by mistake or accident"); *Culp*, 486 A.2d at 1176 (observing that the government must prove a "general intent to enter"); *see also Dauphine v. United States*, 73 A.3d 1029, 1032 (D.C. 2013) ("It is well settled that the general intent to commit a crime means the intent to do the act that constitutes the crime.").

Furthermore, our cases make clear that the mental state with respect to acting against the will of the owner or lawful occupant is not one of purpose or actual knowledge. Rather, it is sufficient for the government to establish that the defendant knew or should have known that his entry was unwanted. Thus, we have held that the government need only prove that the "will" of a lawful occupant was objectively manifest through either express[6] or implied[7] means, not that the

---

[6] *See Artisst*, 554 A.2d at 330 (evidence sufficient to demonstrate entry was against the will of the lawful occupant where entry to a dormitory was "in contravention of a prominently posted warning"); *Smith v. United States*, 281 A.2d 438, 440 (D.C. 1971) (evidence sufficient to demonstrate entry was against the will of the lawful occupant where a construction company occupying a lot "posted signs indicating its rightful control of the site"); *Bowman v. United States*, 212 A.2d 610, 611 (D.C. 1965) (will of the lawful occupant expressed "by sign and by public announcement").

will was subjectively understood by the defendant. Likewise we have rejected the argument that the government must establish that the defendant was personally advised that he did not have permission to enter.[8]

That the government need only prove that a defendant knew or should have known that his entry was unwanted is additionally apparent from our prior recognition that a defendant "lacks the requisite criminal intent for unlawful entry" "[w]hen a person enters a place with a good purpose and a bona fide belief in his or her right to enter." *Darab v. United States*, 623 A.2d 127, 136 (D.C. 1993)

_____

(…continued)
    [7] *See Culp*, 486 A.2d at 1177 (where "at least some of the windows" of a home were "boarded over" but there may not have been a sign forbidding entry, evidence was sufficient to demonstrate entry was against the will of the lawful occupant); *Smith*, 281 A.2d at 440 (no need to post "keep out" sign where access to property was restricted by locked gates and mesh chain link fence topped by barbed wire); *Bond v. United States*, 233 A.2d 506, 514 (D.C. 1967) (even where there were no signs or warnings forbidding entry, conviction for unlawful entry upheld where appellant was found in areas of an office "which were not open to the public"); *McGloin v. United States*, 232 A.2d 90, 91 (D.C. 1967) (noting that "no one would contend that one may lawfully enter a private dwelling house simply because there is no sign or warning forbidding entry").

    [8] *McGloin*, 232 A.2d at 91 (rejecting appellant's argument that he could not be convicted of unlawful entry because he "was not warned verbally or by sign to refrain from entering the premises" and holding instead that "it is more than plain that wandering through [a four-unit apartment] building, climbing on the roof or perching on the fire escape would be against the will of the owner"); *Bowman*, 212 A.2d at 611 (rejecting appellant's contention "that there can be no unlawful entry under the statute unless such entry is contrary to a personal warning or instruction not to enter.").

(quoting *Smith*, 281 A.2d at 439).[9] This "bona fide belief" is generally discussed as a defense that the government must disprove beyond a reasonable doubt if it is fairly raised by the evidence,[10] but it nonetheless informs what the government must prove when it pursues a conviction for unlawful entry. Such a bona fide belief not only "must be based in the pure indicia of innocence,"[11] but also must be reasonably held.[12] In other words, the existence of a reasonable, good faith belief is a valid defense precisely because it precludes the government from proving what it must — that a defendant knew or should have known that his entry was against the will of the lawful occupant.

---

[9] *See also McGloin*, 232 A.2d at 91 ("[O]ne who enters for a good purpose and with a bona fide belief of his right to enter is not guilty of unlawful entry.").

[10] *See Darab*, 623 A.2d at 136 (government must disprove bona fide belief beyond a reasonable doubt); *see also Smith*, 281 A.2d at 439 (bona fide belief instruction only given to the jury if fairly raised by the evidence).

[11] *Gaetano v. United States*, 406 A.2d 1291, 1294 (D.C. 1979); *see also Darab*, 623 A.2d at 136 (same).

[12] *Culp*, 486 A.2d at 1176 ("innocent entry upon unmarked or ambiguously marked premises may constitute a defense to a charge of unlawful entry" so long as it has "some reasonable basis" (citations omitted)); *Smith*, 281 A.2d at 439 ("A bona fide belief must have some justification — some reasonable basis."); *accord Darab*, 623 A.2d at 136; *Gaetano*, 406 A.2d at 1293. Thus, "to warrant an instruction it is not sufficient that an accused merely *claim* a belief of a right to enter." *Gaetano*, 406 A.2d at 1293 (quoting *Smith*, 281 A.2d at 439).

This understanding of the law aligns with the current jury instruction for unlawful entry, to which the trial court in this case looked to discern the elements of the crime. The instruction identifies five elements, the second and fifth of which explicitly define the distinct mental states required: (1) The defendant "entered, or attempted to enter," a private dwelling or part thereof; (2) The defendant "entered, or attempted to enter the property *voluntarily*, *on purpose, and not by mistake or accident*"; (3) The defendant "did so without lawful authority"; (4) "The entry or attempt to enter was against the will" of "the person lawfully in charge of the premises"; and (5) The defendant "*knew or should have known* that s/he was entering against that person's will." Criminal Jury Instructions, No. 5.401 (emphasis added). This instruction is relatively new, dating back to 2009, and the commentary does not indicate the impetus for clarification of the requisite mental states nor the sources on which the committee relied. Its lack of annotations notwithstanding, we conclude that this instruction articulates the elements of unlawful entry with accuracy and helpful precision.

### B. Sufficiency of the Evidence

Having clarified the elements of unlawful entry, we examine the evidence in this case to determine if it was sufficient to sustain Mr. Ortberg's conviction.

Viewed in the light most favorable to the government, *Hemmati v. United States*, 564 A.2d 739, 746 n.14 (D.C. 1989), we hold that it was.

As to the first two elements of unlawful entry, it is uncontested that Mr. Ortberg entered Studio One and that he did so purposefully. Mr. Ortberg likewise never contested the third element, that he was without "lawful authority" to enter Studio One. And as to the fourth element, we conclude that there was ample evidence to establish that his entry was against the will of the lawful occupant of Studio One. This event space inside the W Hotel was rented out for a private fundraising event. The group renting this space had set up a registration table at the entrance to the room and required name tags for event guests. Indeed, Mr. Ortberg acknowledges in his brief that "[i]t may be inferred from the facts developed that the reception within this interior room of the hotel was intended to be 'admission by name badge only.'"[13]

---

[13] We acknowledge Mr. Ortberg's and amicus's argument that hotels, or at least certain areas of hotels (*e.g.*, the lobby), are "semi-public" spaces and that their status as such should have some relevance to the unlawful entry conviction. Such a designation might impact a First Amendment analysis, but it does not figure in a case where the only issue is whether the defendant was properly convicted of unlawful entry. This case simply involves a privately rented banquet hall which under no definition could be considered a semi-public space.

This leaves us to examine whether the evidence was sufficient to establish that Mr. Ortberg knew or should have known that his entry was unwanted — or whether, as the trial court considered sua sponte, there was sufficient evidence to disprove that Mr. Ortberg had a reasonable bona fide belief in his right to enter Studio One. We agree with the trial court that here, too, the evidence was clearly sufficient to establish Mr. Ortberg's guilt of unlawful entry.

Under the circumstances, Mr. Ortberg should have known that he did not have permission to enter Studio One. He testified at trial that he knew from an internet search that the event was a fundraiser and he did not have an invitation. His argument on appeal seems to be that he did not know an invitation was required — that he did not know he could not walk from the lobby area of the hotel into the event space. But he also testified that he knew there was a manned registration desk just by the entrance to Studio One where name tags, or badges, were being handed out. The registration desk and distribution of name tags reasonably should have communicated to Mr. Ortberg that he could not walk in an exit or service door and join the party without an invitation.

The unreasonableness of Mr. Ortberg's actions likewise defeated any bona fide belief defense. Moreover, the evidence clearly disproved such a defense

because Mr. Ortberg's actions were not innocent. Mr. Ortberg indicated that he understood full well the function of the individuals he saw at the registration table by describing them as the "badge checker[s]." And the fact that, when asked by the banquet server if he had a badge, he responded untruthfully to "stall" his ejection from the event space demonstrated that he actually knew he was not permitted to be in the room.[14] Mr. Ortberg argues that the trial court's consideration of his stalling tactic was improper because it was not equivalent to "full knowledge of even a general criminal intent to violate the unlawful entry statute at the time of entry." However, the question is not whether he intended to violate the statute but rather whether he reasonably and actually believed he was permitted to enter the room. As the trial court correctly determined, his dissembling is evidence that he did not.

Finally, we address Mr. Ortberg's assertion that his entry into Studio One and the "brief disruption" he caused there was to be "endured" because he was engaging in protest activity. This argument is without merit. "It is no defense to a charge of unlawful entry . . . that the crime was committed out of a sincere

---

[14] As noted *supra*, the government had no obligation to prove this knowledge, but the evidence of such knowledge unquestionably defeats the bona fide belief defense.

personal or political belief, however genuine, in the rightness of one's actions." *Hemmati*, 564 A.2d at 745. And the bona fide belief defense "was not meant to, and does not, exonerate individuals who believe they have a right, or even a duty, to violate the law in order to effect a moral, social, or political purpose, regardless of the genuineness of the belief or the popularity of the purpose." *Gaetano*, 406 A.2d at 1294. Simply stated, an individual does not have the right to enter private property against the will of the lawful occupant in order to exercise First Amendment rights.

## C. <u>Probation</u>

Mr. Ortberg's second argument on appeal — that the trial court abused its discretion in denying him a hearing on his request to extend his probationary period — is moot. Mr. Ortberg's period of probation expired on May 18, 2012. He filed two motions, one prior to the end of the probationary period, on May 15, 2012, and one after, June 2, 2012, seeking to extend his probationary period to allow him to complete the requisite community service. However, the government never moved to revoke probation nor did the court set a show cause hearing based on Mr. Ortberg's failure to complete community service. Indeed, the government did not reply to either of his motions and the period of probation ended

uneventfully. Thus, Mr. Ortberg was not harmed by the trial court's failure to hold a hearing, nor has he suffered any collateral consequences. As the trial court correctly noted, it had no jurisdiction to consider Mr. Ortberg's motions once the probationary term expired. *See* D.C. Code § 24-304 (a) (2012 Repl.). And he had no reason to seek relief because his probation had not been revoked prior to expiring.

For the reasons set forth above, Mr. Ortberg's conviction for unlawful entry is

*Affirmed.*

ENTERED BY DIRECTION OF THE COURT:

JULIO A. CASTILLO
Clerk of the Court