*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CM-746

KEITH A. WICKS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-10265-16)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued March 10, 2020                    Decided April 30, 2020)

*Chantal Jean-Baptiste* for appellant.

*Edward G. Burley*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman* and *Chrisellen R. Kolb*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and LONG, *Senior Judge, Superior Court of the District of Columbia.*[*]

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

EASTERLY, *Associate Judge*: After Keith A. Wicks was observed reselling tickets outside its stadium, the Washington Nationals Baseball Club, LLC ("Washington Nationals"), barred him from its "property and grounds" at "1500 S. Capitol Street SE." A few weeks later, Mr. Wicks was arrested and charged with unlawful entry, D.C. Code § 22-3302(a)(1) (2012 Repl. & 2019 Supp.), when he walked onto a sidewalk running along the north side of the stadium's structure. Mr. Wicks was found guilty after a bench trial. On appeal he argues that the government's evidence was insufficient to establish either that the sidewalk was private property or that he had the requisite state of mind to enter it against the will of its owner. We agree and reverse his conviction.

Recognizing that, generally, "sidewalk[s are] for the use of everyone alike," *Chvala v. District of Columbia Transit Sys., Inc.*, 306 F.2d 778, 781 (D.C. Cir. 1962), we are confronted with a situation where Mr. Wicks's charged conduct—walking on a sidewalk—hardly looks like a crime; rather, it is an activity that law-abiding individuals engage in every day throughout the District. It was the government's burden to prove that Mr. Wicks in fact committed a crime, specifically the charged crime of unlawful entry. We conclude the government failed to prove the elements of unlawful entry beyond a reasonable doubt. First, it did not prove that the sidewalk was actually private property. Although the government's sole witness testified that

this sidewalk belonged to the Washington Nationals, his testimony also revealed that he had no reliable foundation for that assertion. Indeed, the trial court acknowledged the "limits" to this witness's knowledge. Second, the government did not prove that Mr. Wicks knew or even should have known his presence on the sidewalk was against the will of the Washington Nationals because it did not prove that Mr. Wicks was told, in any form or fashion, that what looked like a public thoroughfare was the private property of the Washington Nationals where he did not have permission to be.

## I. Facts

The sole witness for the government at trial was Metropolitan Police Department Officer Nathan Clarke, who worked part-time for the Washington Nationals. Officer Clarke described his duties as: "handl[ing] disorderly[ attendees,] . . . facilitat[ing] the egress and ingress of patrons coming in to watch the ballgame[,] and whatever other assignments that the Washington Nationals have that are police related." One game-day evening on June 14, 2016, while Officer Clarke was monitoring fans coming into the stadium, he saw Mr. Wicks selling tickets "right outside the center field gate." Officer Clark testified that the "sidewalk area" outside the center field gate on the south side of N Street, SE "is owned and operated by the Washington Nationals." Officer Clarke explained that when he "initially"

saw Mr. Wicks, Mr. Wicks was "on the sidewalk"; Officer Clarke stated that Mr. Wicks "then" moved "onto the street on N Street itself on public space."

Officer Clarke testified that he "responded to that center field gate area . . . to assist" another officer, Detective Bemiller, "with his contact with Mr. Wicks." They "asked [him] to come to the Washington Nationals security office." Inside the security office, Mr. Wicks was served with a copy of a one-page, form "Barring Notice,"[1] which was read aloud to him and which stated:

> The below named person was found on the premises owned, occupied or managed by Washington Nationals Baseball Club, LLC. This same person is hereby warned to stay off the property and grounds thereof known as Washington Nationals Baseball Club, LLC, at (address) 1500 S. Capitol Street SE . . . . There are no exceptions to this notice. Failure to heed this warning shall result in the prosecution for Unlawful Entry under D.C. Code § 22-3302.

Information identifying Mr. Wicks as the "Barred Individual" was added by hand in the spaces provided, as was the reason for issuing the notice: "scalping."

---

[1] Although the barring notice was admitted into evidence, the barring notice in our record on appeal is not marked as an exhibit. However, the government supplied this court with this copy of the barring notice as a supplement to the record, and Mr. Wicks has not argued that the copy admitted into evidence was materially different.

The remaining section of the form was devoted to signature lines, for the "Barred Individual" (this was left blank, and a check mark and notation by Officer Clarke indicated that Mr. Wicks had refused to sign), the "Authorized Agent or Owner" (signed by Lamar Graham[2]), and "Witness" (signed by both Detective Bemiller and Officer Clarke). The last line of the form stated: "Barring Notice is in effect for 5 years unless cancelled in writing[.] Attach Picture if Available." No picture or other documentation was attached.

Officer Clarke testified that he was working again at the Washington Nationals stadium a few weeks later, on July 1, 2016, when he saw Mr. Wicks on N Street SE,[3] which the officer acknowledged was "public space." Using his cell phone, Officer Clarke recorded Mr. Wicks as he "walked onto the Washington Nationals' property in front of the will call office, the sidewalk" and began selling tickets. Officer Clarke then left his post and arrested Mr. Wicks for unlawful entry.

---

[2] Officer Clarke identified this signature as that of "Captain Lamar Graham," whom he clarified was the representative of the Nationals who read the barring notice to Mr. Wicks.

[3] The officer explained that during the baseball game that block of N Street SE was closed to car traffic but open to pedestrians.

On cross-examination, defense counsel probed the basis for Officer Clarke's assertion that the "south side of N Street on the sidewalk" was Washington Nationals property. When counsel asked if Officer Clarke had ever "seen any documents that depict[] what is the Washington Nationals' property and what is not," Officer Clarke specifically denied having seen any "official document" showing that the sidewalk belonged to the Washington Nationals, and he gave no other indication that he had received any training on this subject. He testified he had "only seen documents posted online," but he could not immediately "recollect" what they were or where he had seen them. After requesting a moment to reflect, he replied, "I want to say DCRA," apparently referring to the website for the Department of Consumer and Regulatory Affairs. He then asserted that "they have a diagram of the . . . Washington Nationals' property posted online," but when asked if this diagram "show[ed] how many feet from the abutment of the building belongs to the Washington Nationals," he testified he could not "recall."[4]

---

[4] Also on cross-examination, counsel asked when exactly on June 14, 2016, Officer Clarke had advised Mr. Wicks that he would be barred from Washington Nationals property. Officer Clarke testified, "[t]hat was done when we made contact with him. We told him the reason why we [we]re making contact with him." In response to defense counsel's follow-up question asking what that reason was, Officer Clarke testified, "[b]ecause he was soliciting tickets"—"offering tickets for sale"—"at [the] center field gate right on the Washington Nationals' property and sidewalk."

Testifying in his own defense, Mr. Wicks stated that he was a Washington Nationals fan who frequently attended games. He denied ever being presented with the barring notice, though he agreed that it correctly stated his date of birth. He also testified that he believed that the sidewalk on the south side of N Street "next to the ballpark" was "public space to [his] awareness."

Crediting Officer Clarke's testimony, the trial court found "the evidence established beyond a reasonable doubt that Mr. Wicks crossed the sidewalk and approached the will call window," and thus that he had "entered unlawfully onto the private property of the Washington Nationals" and committed the crime of unlawful entry.

## II. Analysis

Mr. Wicks argues that the evidence was insufficient to support his conviction for unlawful entry under D.C. Code § 22-3302(a)(1) (making it a crime for "[a]ny person . . . without lawful authority [to] enter, or attempt to enter, any private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof").

"We review challenges to the sufficiency of the evidence de novo . . . ." *Foster v. United States*, 218 A.3d 1142, 1144 (D.C. 2019). In so doing, we "consider[] all the evidence in the light most favorable to the verdict, . . . according deference to the factfinder to weigh the evidence, determine credibility, and draw justifiable inferences of fact." *Id.* Even so, it is our obligation to ensure that "the evidence in a criminal prosecution [is] strong enough that a [trier of fact] behaving rationally really could find it persuasive beyond a reasonable doubt." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc). "Slight evidence is not sufficient evidence," *id.*; likewise, evidence that "establish[es no] more than the speculative possibility that the elements are present" will not suffice, *Grayton v. United States*, 50 A.3d 497, 503 (D.C. 2012) (internal quotation marks omitted); *accord Slater-El v. United States*, 142 A.3d 530, 538 (D.C. 2016) ("Although a fact-finder is entitled to draw a vast range of reasonable inferences from evidence, the fact-finder may not base a verdict on mere speculation." (internal quotation marks omitted)).

In *Ortberg v. United States*, 81 A.3d 303 (D.C. 2013), this court clarified that the elements of unlawful entry are (1) the defendant entered onto private property, *id.* at 307 & n.4; (2) "the physical act of entry [was] purposeful and voluntary—not accidental or mistaken," *id.* at 308; (3) the entry was unauthorized, i.e., "without

lawful authority and against the will of [the] owner or lawful occupant," *id.* at 307 (footnote omitted); and (4) the defendant "knew or should have known that his entry was unwanted," *id.* at 308. Mr. Wicks claims that the evidence was insufficient as to the first and fourth elements.

## A. Entry onto Private Property

In issuing its verdict, the trial court stated that it was "not prepared to assume that" the entirety of the sidewalk on the south side of N Street SE, including the brick border closest to the street, "is public property."[5] Instead, it determined that when "Mr. Wicks crossed the sidewalk and approached the will call window" on July 1, 2017, he "entered unlawfully onto the private property of the Washington Nationals." Although the trial court was rightly skeptical that the entire width of this city sidewalk was "private property,"[6] we see no evidentiary basis for the court's

---

[5] This statement was consistent with the trial court's earlier determination, when rejecting Mr. Wicks's motion for a judgment of acquittal, that there was "sufficient proof that even if the brick portion of the sidewalk [closest to the street] is public property when he leaves the brick portion and crosses onto the concrete portion and then goes by the will call office he is on Nationals' property."

[6] For many years, the general "rule in the District of Columbia" has been "that the sidewalks *of the District of Columbia* extend from the curb bounding the street to the building line . . . ." *Gittleson v. Robinson*, 61 A.2d 635, 637 (D.C. 1948) (emphasis added); *cf. Morgan v. District of Columbia*, 476 A.2d 1128, 1129–30 (D.C. 1984) (demonstrators arrested for unlawful assembly after moving from public sidewalk to private driveway).

conclusion that a *portion* of the sidewalk by the will call office belonged to the Washington Nationals. Officer Clarke, the government's only witness, never delineated only some portion of the sidewalk outside the stadium as belonging to the Washington Nationals (and he never described the sidewalk as being made of two different materials). To the contrary, he testified that the entirety of the sidewalk on the south side of N Street SE was the "property of the Washington Nationals." We thus evaluate whether this testimony can sustain the first element of the crime of unlawful entry.

The court acknowledged that there was a question whether Officer Clarke was "competent to testify about the boundaries of Nationals Park." Nevertheless, the court concluded that it could rely on Officer Clarke's testimony about what constituted the property of the Washington Nationals by analogizing to a homeowner who, in lieu of presenting expert testimony, may testify about the valuation of their property. We do not disagree with the general proposition that a property owner may testify about the boundaries of their property. But even the testimony of a property owner may not be relied upon to prove unlawful entry where, as here, that testimony fails to establish that the owner—or, as in this case, their employee—has an actual basis of knowledge. *Cf. Joiner-Die v. United States*, 899 A.2d 762, 765 (D.C. 2006) ("A witness is competent to testify only about those matters of which

he/she has personal knowledge."); *cf. also Harrison v. United States*, 76 A.3d 826, 841 n.19 (D.C. 2013) (acknowledging that "personal knowledge includes inferences and opinions, so long as they are grounded in personal observations and experience" (internal quotation marks omitted)).

The record contains no evidence that the Washington Nationals provided Officer Clarke with information about the boundaries of its property. Although the trial court referred in passing to Officer Clarke's "on the job training," Officer Clarke did not testify that he had learned about the boundaries of the Washington Nationals property while working. He never indicated he had previously issued any barring notices or made any unlawful entry arrests, much less testified that his job regularly included "enforcing the boundaries of the park" as the government represents in its brief. Although Officer Clarke broadly described his job as performing "whatever . . . assignments the Washington Nationals have that are police related," when he specified what those assignments were, he explained they largely related to crowd control—"handl[ing] disorderly[ attendees,] . . . facilitat[ing] the egress and ingress of patrons coming in to watch the ballgame."

Further, Officer Clarke did not testify that he had a reliable, personal basis of knowledge that the sidewalk belonged to the Washington Nationals. He admitted

that he had not seen any official surveys of the Washington Nationals property and that he had relied exclusively on some unidentified "documents posted online." The government represents in its brief that Officer Clarke "confirmed this property line on the DCRA website," but his testimony about where online he had seen these documents was equivocal at best: after asking for a moment to "recollect" his source of information, he testified, "I want to say DCRA." And when asked whether whatever he had seen online "show[ed] how many feet from the abutment of the building belong[] to the Washington Nationals," he again testified he could not "recall." The government did not seek to rehabilitate Officer Clarke on this point on redirect and did not seek to put any exhibits into evidence to substantiate the Washington Nationals' ownership of the sidewalk.[7]

---

[7] At oral argument, the government directed attention away from the DCRA website, observing that "the DDOT [District Department of Transportation] website actually has a mapping tool which you can determine [property lines]." But the government never elicited evidence from Officer Clarke that he might have looked at the DDOT website, nor asked the trial court to judicially notice any information contained on the DDOT (or any other government) website. *See Bostic v. District of Columbia*, 906 A.2d 327, 332 (D.C. 2006) ("[W]e may take judicial notice of laws, statutes, and other matters of public record.").

We note that, had the government asked the trial court to judicially notice the records generated by the DDOT mapping tool, it appears that the evidence would not have supported the government's case. This tool, Atlas Plus, developed by the District's Office of the Chief Technology Officer, indicates that the property line of the Washington Nationals stadium along N Street SE is coextensive with the footprint of the physical structure and does not extend into the sidewalk. *See Atlas All-in-One*, District Dep't of Transp., https://ddot.dc.gov/page/atlas-all-one

In its verdict, the trial court commended Officer Clarke for "candidly . . . admit[ing] the limits of his knowledge." But these "limits" revealed that Officer Clarke provided no reliable foundation for his assertion that the sidewalk on the south side of N Street SE, next to the stadium, was owned by the Washington Nationals. Accordingly, these "limits" rendered the government's evidence insufficient as to the first element of unlawful entry—entry on to private property.

## B. The Defendant's Mental State Regarding Entry Against the Will of the Owner

Mr. Wicks argues that the evidence against him was insufficient for an additional reason: even if he entered private property owned by the Washington Nationals when he walked onto the sidewalk on the south side of N Street SE, the government did not show that he did so with the requisite state of mind with respect to the circumstance that his entry was against the will of the Washington Nationals.[8] In *Ortberg*, this court described this mens rea element as requiring the government

---

https://perma.cc/TBQ4-NFDE (describing Atlas Plus); *Atlas Plus*, District of Columbia, http://atlasplus.dcgis.dc.gov/ http://perma.cc/6CXK-XDXH (link to tool).

[8] *See Carrell v. United States*, 165 A.3d 314, 320 n.13 (D.C. 2017) (en banc) (adopting the Model Penal Code's classification of "conduct, circumstance[], and result[]" elements of a crime (internal quotation marks omitted)).

to "establish that the defendant knew or should have known that his entry [on private property] was unwanted." 81 A.3d at 308. Subsequent to *Ortberg*, this court sitting en banc in *Carrell v. United States*, 165 A.3d 314 (D.C. 2017), announced a new approach for categorizing mens rea terminology and endorsed the "more particularized and standardized categorizations of mens rea" set out in the Model Penal Code. *Id.* at 324. As we noted in *Carrell*, when defining the elements of a crime without a specified mens rea, courts should "generally . . . infer that the government must prove at least that a defendant knows the facts that make his conduct fit the definition of the offense."[9] *Id.* at 321 (footnote and internal quotation marks omitted). We further acknowledged "that merely inferring a negligence, i.e., should-have-known, standard is disfavored."[10] *Id.* at 322 (footnote omitted). It is unclear whether *Ortberg* meant to endorse a negligence standard within the meaning

---

[9] Model Penal Code § 2.02(2)(b) (Am. Law Inst. 1985) ("A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.").

[10] Model Penal Code § 2.02(2)(d) ("A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.").

of the Model Penal Code,[11] or, if it did, whether such a standard would survive our analysis in *Carrell*, but we need not resolve this issue here. Even assuming that the Model Penal Code negligence standard applies, we cannot say on this record that the government established that Mr. Wicks "should [have] be[en] aware of a substantial and unjustifiable risk that" he was on private property owned by the Washington Nationals. Model Penal Code § 2.02(2)(d) (Am. Law Inst. 1985).

First, the lack of evidence that the sidewalk belongs to the Washington Nationals, see *supra* Part II.A., itself raises doubt that Mr. Wicks should have been aware that it did. Second, there is no evidence that the Washington Nationals publicly held itself out as the owner of property beyond the stadium structure: there is no evidence in the record about signage, barriers, or other announcements outside the stadium that would have informed a reasonable person that stepping on to the sidewalk would put them on private property.[12] Third, the barring notice is not

---

[11] *Ortberg* did not cite to the Model Penal Code. Instead, it catalogued this jurisdiction's prior unlawful entry cases. Although *Ortberg* understood these cases to collectively reflect that proof of "actual knowledge" was unnecessary, 81 A.3d at 308, in all of the cases cited and indeed, in *Ortberg* itself, actual knowledge (which is rarely established by direct evidence, *see Owens v. United States*, 90 A.3d 1118, 1122 (D.C. 2014)), could be inferred from the surrounding circumstances. *See Ortberg*, 81 A.3d at 308 nn.6–8, 310.

[12] *See, e.g.*, *Ortberg*, 81 A.3d at 305–06, 309 (event space in hotel that was restricted where registration desk was set up at entrance for guests to pick up

specific as to what property is barred: it gives only a street address for a different street, South Capitol Street SE, and it did not append a map showing what property outside of the stadium structure, if any, was covered.[13] Fourth, Mr. Wicks's receipt of the barring notice on June 14, 2016, after being confronted by Officer Clarke and Detective Bemiller in one location—on the street, outside the center-field gate—did not put him on notice the location of his arrest on July 1, 2016—on the sidewalk outside the will call office—was Washington Nationals property.[14] Indeed, the barring notice given to Mr. Wicks in the security office on June 14, 2016, specified that it was issued because Mr. Wicks was "scalping"—not because he was

---

badges); *Kozlovska v. United States*, 30 A.3d 799, 800 & n.1 (D.C. 2011) (stairwell of apartment building that was restricted where access was controlled by security key); *Artisst v. United States*, 554 A.2d 327, 329 (D.C. 1989) (university residence facility that was restricted where university identification card was required for access); *Culp v. United States*, 486 A.2d 1174, 1175 (D.C. 1985) (vacant building that was restricted where windows and doors were boarded up and a "no trespassing sign" was posted); *Bowman v. United States*, 212 A.2d 610, 610–11 (D.C. 1965) (train platform that was restricted where passengers had to enter through gate bearing a "sign stating that only persons holding transportation (having tickets) were permitted through" and after "public announcement to the same effect").

[13] *Cf. Vaas v. United States*, 852 A.2d 44, 48 (D.C. 2004) (reversing contempt conviction based on violation of ambiguous stay-away order and "strongly suggest[ing] that in future orders trial courts endeavor to set more defined parameters, using maps, if practicable, that can be attached to the stay-away orders to provide defendants with clear guidance about this important aspect of a release order").

[14] Accordingly, it is not particularly probative that the notice stated that Mr. Wicks "was found on the premises" on June 14, 2016.

trespassing.[15] Accordingly, the evidence was insufficient to establish that Mr. Wicks had the requisite mens rea regarding the circumstance element that his entry onto the sidewalk on the south side of N Street SE adjacent to the Washington Nationals' stadium was "against the will" of the Washington Nationals. *Ortberg*, 81 A.3d at 308.

### III. Conclusion

For the foregoing reasons, we reverse Mr. Wicks's conviction for unlawful entry and remand to allow the trial court to enter a judgment of acquittal.

*So ordered.*

---

[15] Officer Clarke's testimony that when he and Detective Bemiller "made contact with Mr. Wicks" on the street, they told him why they were approaching him—because he had been "offering tickets for sale" "at [the] center field gate right on the Washington Nationals' property and sidewalk," see *supra* note 4—adds little to the evidentiary equation. The officers' identification of "scalping" as the reason to approach Mr. Wicks was consistent with the barring notice, and their reference to the location of this activity was similarly vague.