## NIEVES v. UNITED STATES.
### No. 9227.

United States Court of Appeals

District of Columbia.

Argued Jan. 16, 1947.

Decided Feb. 10, 1947.

Mr. Warren E. Miller, of Washington, D. C., for appellant.

Mr. Searcy L. Johnson, Sp. Asst. to the Atty. Gen., with whom Messrs. Edward M. Curran, U. S. Atty. at the time the brief was filed, and Thomas E. Walsh, Dept. of Justice, both of Washington, D. C., were on the brief, for appellee.

Mr. Sidney S. Sachs, Asst. U. S. Atty., of Washington, D. C., also entered an appearance for appellee.

Before GRONER, Chief Justice, and EDGERTON and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

Gregorio Cruz Collazo enlisted in the United States Army on February 26, 1915. He became mentally unbalanced, and was officially declared incompetent as of February 13, 1917. On April 12, 1917, he was discharged from the army, but was confined in an insane asylum until his death on January 15, 1944.

After the inception of Collazo's disabling misfortune, the Congress enacted on October 6, 1917, what was termed a War Risk Insurance Act, which, among other things, provided that "any person in the active service on or after the sixth day of April, nineteen hundred and seventeen, who, while in such service and before the expiration of one hundred and twenty days from and after such publication,[1] becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each * * *"[2].

Collazo did not apply for war risk insurance and none was issued to him. His guardian filed a claim, however, on January 2, 1941, seeking total disability benefits. That claim having been denied by the Veterans Administration, on April 2, 1942, the guardian sued in the District Court of the United States for the District of Columbia to recover under the automatic insurance alleged to have been granted by the statute above mentioned.

For reasons not disclosed by the record before us, the case had not been tried when Collazo died on January 15, 1944. In November of that year, the appellant, Rita

---

[1] It was provided by the Act that the terms and conditions of the insurance contracts issued thereunder should be published. This was done on October 15, 1917, so the period of one hundred and twenty days began to run from that day.

[2] 40 Stat., Part 1, page 409, § 401. An amendment to the section in 1919, 41 Stat. page 375, is to the effect that "any person in the active service on or after the 6th day of April, 1917, and before the 11th day of November, 1918, who, while in such service, * * *." This manifests a Congressional intention to limit the benefits to those whose disabilities occurred during the period of our participation in World War I.

Cruz Nieves, was substituted as plaintiff, having proved herself to be Collazo's daughter and sole heir. She was permitted to file an amended complaint seeking $25 per month from April 12, 1917, the date of Collazo's discharge from the army, to January 15, 1944, when he died.

The soldier's permanent total disability was found by the District Court to have existed from February 13, 1917, until his death. That court interpreted the automatic insurance provision, § 401 of the War Risk Insurance Act as amended, as applying only to those persons who were in the armed service on or after April 6, 1917, and who became permanently and totally disabled on or after that date, and before the expiration of a period of one hundred and twenty days after October 15, 1917, when the terms and conditions of the insurance granted by the Act were published. As the disability of appellant's father began on February 13, 1917, her suit was dismissed. She appeals.

The facts not being disputed, there is presented to us the single question whether automatic insurance under § 401 of the War Risk Insurance Act as amended is due to a soldier who became permanently and totally disabled prior to April 6, 1917.

It will be observed that the Act grants insurance to one who had not applied for it if he had been in the active service on or after the sixth day of April, nineteen hundred and seventeen, and if, while in such service and before the expiration of one hundred and twenty days from and after the publication, he became totally and permanently disabled.

Concededly, Collazo was "in the active service on or after the sixth day of April, nineteen hundred and seventeen," as well as prior thereto. Admittedly, he became "totally and permanently disabled." The only question is whether he became so disabled "while in such service." So the case turns on the significance of the words "such service," for unless the disability began during "such service," the appellant cannot prevail.

The word "such" is restrictive in its effect and obviously relates to an antecedent. In its context here, it refers to a specific kind of service—not just any active service—previously mentioned in the statute. The only service mentioned in the Act before the use of the word "such" is "active service on or after the sixth day of April, nineteen hundred and seventeen."

It must therefore be concluded that "such service" means active service on or after April 6, 1917; and that automatic insurance not actually applied for was given by § 401 to the soldier who, while in the active service on or after April 6, 1917, became totally and permanently disabled. Collazo's disability, having begun on February 13, 1917, was not suffered on or after April 6, 1917, and consequently was not incurred "while in such service."

From what has been said it follows that the District Court properly construed the statute. The same conclusion was reached by the Court of Appeals for the Seventh Circuit in Continental Illinois National Bank & Trust Co. of Chicago v. United States, 123 F.2d 1013, and by the District Court for the Western District of Washington in Stavros v. United States, 3 F.Supp. 213.

Affirmed.