*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 14-CO-876 & 14-CO-992

JOSÉ I. ZALMERÓN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(FEL-7542-93)

(Hon. Lee Satterfield, Trial Judge)

(Argued May 27, 2015                    Decided  October 29, 2015)

*Jeffrey Stein*, with whom *Jaclyn Frankfurt* and *James Klein* were on the brief, for appellant.

*John Cummings*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the briefs were filed, and *Elizabeth Trosman*, Assistant United States Attorney,  were on the brief, for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and BELSON, *Senior Judge*.

BECKWITH, *Associate Judge*:  Appellant José Zalmerón pleaded guilty to attempted possession with intent to distribute (PWID) a controlled substance in January of 1994.  In March of 2014, Mr. Zalmerón moved to vacate his conviction and withdraw his guilty plea pursuant to D.C. Code § 16-713 (b) (2012 Repl.)

because, as he stated in an affidavit, the trial judge never advised him that he could face adverse immigration consequences as a result of his guilty plea. Before the government's time to respond had expired, the trial judge denied the motion based on his recollection that the warnings were given. For the reasons explained below, we remand for further proceedings as described in this opinion.

**I.**

After accepting Mr. Zalmerón's guilty plea in January 1994, the trial court sentenced him to one to three years of incarceration, suspended all of that sentence, and placed him on probation for eighteen months. In June of 1994, Mr. Zalmerón's probation was revoked and he was sent to prison and subsequently deported because of this conviction. Mr. Zalmerón later returned to the United States—the record does not say when—but he was again detained by the federal government and subjected to removal proceedings. At the time of oral argument, he was being held at an immigration detention facility in Virginia, and the U.S. Court of Appeals for the Fourth Circuit stayed his deportation while his appeal was under advisement in that court.

At some point—again, the record does not specify when—Mr. Zalmerón learned that D.C. law required the trial judge in his attempted PWID case to warn

him of potential adverse immigration consequences before he entered a guilty plea. That statute, D.C. Code § 16-713 (a) (2012 Repl.), requires trial judges to advise non-citizen defendants of the immigration consequences of their convictions and provides that a defendant may have his conviction vacated and may withdraw his plea if the court failed to provide such a warning and the defendant was subsequently deported or suffered other immigration consequences. D.C. Code § 16-713 (b).

In February of 2014, Mr. Zalmerón moved to vacate his conviction and withdraw his plea, alleging that the required warnings were not given. The government did not respond to the motion. The trial court denied the motion, noting that Mr. Zalmerón's motion relied upon part of the Innocence Protection Act of 2001, D.C. Code § 22-4135 (2012 Repl.), which requires a petitioner to assert actual innocence, and that Mr. Zalmerón did not do so.

New counsel for Mr. Zalmerón filed a second motion in March of 2014, raising the same allegations under D.C. Code § 16-713 (b). Mr. Zalmerón also submitted a sworn affidavit indicating that he was not a citizen of the United States, that he faced adverse immigration consequences as a result of his conviction, and that the trial judge had not provided the required warnings prior to

accepting his plea. In support of his assertion that the warnings were not given, Mr. Zalmerón pointed out that the jury waiver form that he signed did not provide the required advisement of potential immigration consequences. The motion noted that the Court Reporting and Recording Division of the Superior Court had informed counsel that transcripts of the plea hearing were no longer available.

The government did not respond to this motion either. The trial court denied the motion on April 1, 2014, stating that "[u]pon review of the chambers file the Court recalls that at the plea hearing it asked the Defendant his place of birth and subsequently advised Defendant of possible immigration consequences, including deportation from the United States, exclusion from the United States, or denial of naturalization by the United States."

On April 22, 2014, Mr. Zalmerón filed a motion asking the trial court to disclose the chambers file referred to in its order, arguing that the trial court "made a decision regarding an issue of fact (i.e. whether the Court advised Mr. Zalmerón as to possible immigration consequences at the time [he] entered a plea of guilty in 1994) based on evidence not currently in the record." Mr. Zalmerón also noted that disclosure of the chambers file was necessary to allow meaningful appellate review.

On May 20, 2014, the trial court ordered a response from the government. The government's one-page response took "no position on defendant's request for disclosure of documents from the Court's own chambers file," but it separately noted that "it does not appear that disclosure of documents from the chambers file would cast light on the substance" of the court's order denying Mr. Zalmerón's motion because "[a]s stated in the order," the court's "recollection" that it advised Mr. Zalmeron "exists separate and apart from the documents in the chambers file." The trial court adopted the government's reasoning and denied Mr. Zalmerón's motion.

Noting that the trial judge had made a factual determination that the warnings were given that was based only on his memory and that was contrary to Mr. Zalmerón's sworn affidavit, Mr. Zalmerón moved to vacate the order, recuse the trial judge, and—because the trial judge was now the Superior Court's chief judge[1]—certify the case to an independent judicial officer outside the Superior Court for an evidentiary hearing on whether the warnings were given, with the trial judge serving as a witness and not as the factfinder. The government did not

---

[1] Chief Judge Lee Satterfield accepted Mr. Zalmerón's plea in 1994 when he was still an associate judge. He had become Chief Judge of the Superior Court by the time he denied Mr. Zalmerón's plea withdrawal motion in 2014.

respond. The trial court did not address the merits of Mr. Zalmerón's arguments or rule upon the motion. Instead, the court vacated its April 1 order and again denied Mr. Zalmerón's initial motion under D.C. Code § 16-713 so that Mr. Zalmerón could file a timely notice of appeal. This appeal followed.

## II.

The statute at issue in this appeal, D.C. Code § 16-713, provides that "[p]rior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime, the court shall administer the following advisement on the record to the defendant:"

> If you are not a citizen of the United States, you are advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

D.C. Code § 16-713 (a). Subsection (b) further provides that a defendant may have his conviction vacated and may withdraw his plea if "the court fails to advise the defendant as required by subsection (a) and the defendant shows that [the] conviction . . . may have the consequences for the defendant of deportation, exclusion from the United States, or denial of naturalization pursuant to the laws of the United States." D.C. Code § 16-713 (b). Subsection (b) goes on to state that

"[a]bsent a record that the court provided the advisement required by subsection (a), the defendant shall be presumed not to have received the required advisement." *Id.*

Mr. Zalmerón contends, as an initial matter, that he is entitled to outright reversal of the trial court's denial of his motion to withdraw his plea on the grounds that (1) the trial court's memory of events twenty years earlier was insufficient to rebut the presumption under § 16-713 (b) that no warnings were given, and (2) that the government waived any right to a remand to supplement the record by failing to proffer its own evidence in the trial court that the warnings were given and by failing to raise the waiver arguments it now says foreclose Mr. Zalmerón's claim.  In the alternative, Mr. Zalmerón argues that the trial court erred in refusing to grant him an evidentiary hearing at which a judge who was not also a witness could resolve the contested factual issue, and that this court should remand for such a hearing, order the trial court to provide a copy of all materials relating to the plea proceeding, and direct that the hearing be held before a judge of this court, given the appearance of bias if another Superior Court judge were called upon to evaluate the testimony of a colleague who, as the court's chief judge, wields considerable power over the other judges of that court.  *See, e.g.*, D.C. Code § 11-908 (empowering chief judge to "assign and reassign any judge to sit in any

division or branch); D.C. Code § 11-1702 (requiring the chief judge to handle all administrative matters not decided by the Joint Committee on Judicial Administration).

For its part, the government now concedes that under *Valdez v. United States*, 906 A.2d 284 (D.C. 2006), Mr. Zalmerón successfully triggered the statute's presumption of nonadvisement—and shifted the burden to the government to establish that the warnings were given—by "set[ting] forth facts, by sworn affidavit, indicating that (1) he did not receive the required warnings, (2) he was an alien at the time he pleaded guilty and his status remained unchanged, and (3) the admissions made during the plea hearing, at least in part, have resulted in one of the enumerated adverse immigration consequences." *Valdez*, 906 A.2d at 290.[2]

---

[2] The government made this concession at oral argument. In its brief it had argued that Mr. Zalmerón's affidavit did not trigger the presumption of nonadvisement because he failed to initiate a reconstruction of the record under D.C. Rule App. 10 (c), which provides that the record on appeal may consist of a "statement of the evidence or proceedings from the best available means," submitted by appellant to the trial judge for approval after other parties have the opportunity to object or propose amendments. Rule 10 (c), however, is a rule of *appellate* procedure that clarifies what type of a record is necessary for the D.C. Court of Appeals to provide "meaningful appellate review" of the claims before it. *Egbuka v. United States*, 968 A.2d 511, 517-18 (D.C. 2009). The rule has no bearing on the showing a petitioner must make to merit relief in the Superior Court or on the quantum of evidence necessary to trigger the presumption of nonadvisement under D.C. Code § 16-713.

The government does not specifically defend the sufficiency of the evidence upon which the trial court based its denial of Mr. Zalmerón's plea withdrawal motion, but instead disagrees with Mr. Zalmerón's assertion that the government is not entitled to a remand to try to prove the warnings were given. The government further acknowledges that if the proceedings on remand advance to a point at which Mr. Zalmerón's statement stands in opposition to that of the trial court on the question whether warnings were given, then the D.C. Circuit's opinion in *Downey v. United States*, 91 F.2d 223 (D.C. Cir. 1937)—binding on us under *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971)—requires that the contested facts be determined by another judge besides the chief judge, preferably one who is not on the D.C. Superior Court. *See Downey*, 91 F.2d at 233 (holding that "where recourse to the memory of the justice who [made the statement in question] is necessary to prove the fact [in dispute], he should be heard as witness, but not as judge and witness both"). Finally, the government also asks us to hold that on remand the trial court may reject Mr. Zalmerón's claim for a different reason— namely, that Mr. Zalmerón's lengthy and unexplained delay in seeking relief under D.C. Code § 16-713 (b) amounts to a complete waiver of or, in the alternative, an

important factor that warrants denial of his untimely nonadvisement claim.[3]

This appeal thus boils down to two disputed issues: whether Mr. Zalmerón is entitled to reversal—and to withdrawal of his plea—because once the burden to prove nonadvisement shifted to the government, the government produced nothing and should not get another chance to meet its burden, and, if not, whether the government should have the opportunity on remand to establish that Mr. Zalmerón waived his claim under § 16-713 by failing to raise it until his present detention. For the reasons explained below, we reject Mr. Zalmerón's request for an outright reversal, but vacate the trial court's denial of his plea withdrawal motion and remand for an evidentiary hearing on whether the warnings were given. We further hold that unexcused delay in filing for relief under § 16-713, if it could be established on remand, would be one factor the trial court may consider when assessing Mr. Zalmerón's credibility.

We turn first to Mr. Zalmerón's argument that we should direct the trial

---

[3] The government argued in its brief that we should affirm because of the unexplained delay, but at oral argument the government conceded that it did not raise this defense before the trial court, that Mr. Zalmerón had no occasion to establish that his delay was excusable, and that this court could not deem Mr. Zalmerón's claim foreclosed on the basis of delay without first remanding for an evidentiary hearing.

court to grant his request to withdraw his plea because the government waived its right to a remand by failing to seek to rebut the presumption of nonadvisement with evidence besides the trial judge's memory. Though we do not lightly disregard Mr. Zalmerón's arguments that he will be prejudiced by additional delay for proceedings on remand, we are nonetheless unwilling to conclude, on this record, that the government waived its request to present additional evidence on remand. While Mr. Zalmerón argues forcefully that the government should not get another bite at the apple after having failed to present its own evidence once Mr. Zalmerón's affidavit shifted the burden, we are loath to foreclose a remand in this case given the murkiness of the proceedings in the trial court. To begin with, the trial court issued its initial ruling in the government's favor before the time to respond had lapsed, and the government asserts, in any event, that its longstanding practice in Superior Court is to respond to § 16-713 motions only when ordered by the trial court to do so.[4] When the government did respond to Mr. Zalmerón's

---

[4] In *Valdez*, we took note of a similar representation by the government in that case that "the office of the United States Attorney ordinarily is not required to respond to a motion to withdraw a guilty plea unless the Superior Court requests such a response." *Valdez v. United States*, 906 A.2d 284, 285 n.1 (D.C. 2006). *But see* Super. Ct. Crim. R. 47-I (c) (providing that when a motion is filed in a criminal case, "[a] written statement of opposing points and authorities shall be filed within 10 days thereafter and shall be served upon all parties, unless otherwise provided

(continued…)

subsequent motion to disclose the chambers file, it tailored that response narrowly to address only the question posed by the trial court regarding whether the chambers file should be disclosed. Notwithstanding Mr. Zalmerón's contentions that the government's response implicitly suggested that the trial court's uncorroborated memory was sufficient to meet its burden and that Mr. Zalmerón's motion to disclose the chambers file and his final omnibus pleading clearly signaled Mr. Zalmerón's intent to litigate this matter, we have qualms about characterizing Mr. Zalmerón's subsequent motions as so clearly compelling a response from the government on the merits that any failure to fully develop its record was tantamount to waiver. We agree with the government that a remand is in order.

We next address the government's argument that Mr. Zalmerón's claim under D.C. Code § 16-713 is subject to a time waiver and that the government should be entitled on remand to present evidence that Mr. Zalmerón's delay in

---

(…continued)
by the Court."). In the context of § 23-110 motions, Rule 3 of the Rules Governing Proceedings Under D.C. Code § 23-110 explicitly authorizes the practice the government says applies without such explicit authorization in the context of plea withdrawal motions.

presenting the claim precludes him from winning relief under the statute.[5]  Mr. Zalmerón argues that the plain language of the statute forecloses the government's argument that courts may rely on any time-waiver principle to reject motions under § 16-713.  Indeed, as Mr. Zalmerón notes, the text of § 16-713 contains no time limitation at all, in "stark contrast" to other statutes and court rules that explicitly limit the time during which relief may be sought or provide other penalties for delay.  *See, e.g.*, D.C. Code § 22-4004 (a)(3) (three-year limitation to file for review of determination that person must register as a sex offender); D.C. Code § 16-802 (c)-(d) (motion to seal record based on actual innocence must meet more stringent burden if filed more than four years after termination of prosecution); D.C. Code § 23-110 (b)(2) (establishing a laches-like defense in § 23-110 proceedings); Super. Ct. Crim. R. 33 (motion for new trial based on newly discovered evidence must be made within three years after verdict or finding of guilt).  We have emphasized that "[t]he intent of the legislature is to be found in the language used," that "[t]he burden on a litigant who seeks to disregard the plain

---

[5]  "The proper construction of a statute raises a question of law," *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008), and "this court generally reviews legal conclusions de novo," *District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys. Inc.*, 56 A.3d 477, 480 (D.C. 2012).

meaning of the statute is a heavy one," and that "this court will look beyond the ordinary meaning of the words . . . only where there are persuasive reasons for doing so." *Hard Rock Café v. District of Columbia Dep't of Emp't Servs.*, 911 A.2d 1217, 1219 (D.C. 2006) (citation omitted); *see also EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015) (refusing to "add words to the law to produce what is thought to be a desirable result" and construing the statute's "silence as exactly that: silence").  In that vein, the government's claim that a petitioner waives his right to relief if he does not file his motion until after the transcript is destroyed is at odds with the statute's express presumption of nonadvisement in cases where the record is no longer available, D.C. Code § 16-713 (b), and with the legislators' central concern that the law "ensure notice to aliens of the consequences of a guilty plea."  District of Columbia Sentencing Improvements Act of 1982, Act No. 4-286, 30 D.C. Reg. 173 (1983).

The government notes that seven other states have immigration advisement statutes like § 16-713, but it points to no published decision holding that a lengthy delay in bringing a nonadvisement claim amounts to a complete waiver under these states' statutes.  The unpublished opinions on which the government relies are less than helpful—at least one, for example, appears to be clearly distinguishable, *see, e.g.*, *Den Van Nguyen v. State*, 288 P.3d 129 (Haw. Ct. App. 2012) (table) (relying

upon a court rule that contained an explicit waiver rule for issues raised for the first time in post-conviction proceedings, *see* 2012 WL 4454735, at *2)—and do not, in any event, convince us to read our statute in a manner inconsistent with its text and underlying policy.

We do agree, however, with the government's alternative argument that unexplained delay is a factor that is potentially relevant to the adjudication of the nonadvisement claim on the merits.[6] In *Ramsey v. United States*, 569 A.2d 142 (D.C. 1990), we addressed a similar claim in the context of a criminal defendant's effort to withdraw a guilty plea based on the alleged ineffectiveness of his counsel under D.C. Code § 23-110. There, the government argued that the trial court should "determine whether appellant 'slept on his rights' before assessing the merits of appellant's claim" when considering his motion. *Id.* at 148-49. The court rejected the government's argument and held that "lapse of time and prejudice to the government cannot, by themselves, bar a § 23-110 motion seeking

---

[6] As the government noted at oral argument, the relevant delay is between the time that the petitioner first faces adverse immigration consequences resulting from the plea and the time that he files his petition to withdraw his plea, not the time between the plea and the motion.

to withdraw a guilty plea."[7]  *Id.* at 148.  Even so, we stated that "in conducting an evidentiary hearing (if required as it is here)," the trial court "may consider the length of delay . . . , any excuses for that delay, and any resulting prejudice to the government as factors bearing on the credibility of appellant's claim."  *Id.* at 148-49; *cf. State v. Francis*, 820 N.E.2d 355, 362 (Ohio 2004) (rejecting the intermediate appellate court's determination, in the context of a claim under Ohio's version of § 16-713, "that, as a matter of law, untimeliness . . . was a sufficient factor in and of itself to justify the trial court's decision to deny the motion").  We likewise conclude that allowing the trial court to consider delay as one factor when evaluating the credibility of the petitioner's claim is sufficient to ensure that justice is properly administered in § 16-713 cases.[8]

Finally, with respect to Mr. Zalmerón's argument that on remand a different judge from the trial judge who took the plea must act as factfinder in determining

---

[7] The D.C. Council did not establish the laches-like defense in § 23-110 (b)(2) until 2009.  *See* D.C. Law 18-88, § 220 (Dec. 10, 2009).

[8] Because we have rejected Mr. Zalmerón's argument that the government waived its right to present evidence rebutting the presumption of nonadvisement and because we are remanding for an evidentiary hearing on the merits of the nonadvisement claim, we need not consider Mr. Zalmerón's argument that the only evidence of advisement that has thus far been offered—the judge's recollection—was insufficient to rebut the statutory presumption of nonadvisement.

whether the required warnings were given, we agree that if the government seeks

to present evidence, whether by affidavit or through the judge's own testimony, of

the trial judge's recollection, *Downey* requires this to take place before a different

judge.[9] *See Downey*, 91 F.2d at 234 (remanding for an independent judge to take

evidence from the government, including testimony from the sentencing judge as a

witness, on the question whether appellant was sentenced concurrently or

consecutively); *see also United States v. Redondo-Lemos*, 27 F.3d 439, 443 (9th

Cir. 1994) (stating that a judge "cannot very well weigh his own credibility"). *Cf.*

Code of Judicial Conduct, Rule 2.11 (A) (2012) ("A judge shall disqualify himself

or herself in any proceeding in which the judge's impartiality might reasonably be

---

[9] As noted above, the government conceded at oral argument that under *Downey* any weighing of the trial court's testimony against that of Mr. Zalmerón must be conducted by another judge. Nothing in *Valdez* indicates that *Downey*'s holding does not likewise govern an assessment of an affidavit as well as testimony by the trial judge. While language in *Valdez* indicated that "[a]n affidavit from the judge who accepted the plea which contained necessary details would be more than adequate" to establish the government's burden of proving advisement, 906 A.2d at 289, it did not state—and, in light of *Downey,* could not have stated—that it would be appropriate for the plea judge to consider the veracity of *his own affidavit* in denying the petitioner's claim. According to the government's brief in *Valdez*, the guilty plea was taken in 1989 by a different judge from the two judges who later issued orders denying the § 16-713 motion in 2004. Br. for Appellee, 2005 WL 5652807, at *1-2. And in the case on which *Valdez* relies for the idea that the plea judge's affidavit would be sufficient—*Commonwealth v. Ciampa*, 747 N.E.2d 185 (Mass. App. Ct. 2001)—the *motion* judge considered an affidavit from the *plea* judge, who had since retired. *Id.* at 187-88.

questioned, including but not limited to the following circumstance: . . . (6) The judge: (c) was a material witness concerning the matter."). If the government does not seek to rely on the trial judge's recollection in seeking to satisfy its burden under § 16-713 (b), reassignment to another judge will not be necessary.[10]

## III.

For the foregoing reasons, we vacate the trial court's order denying Mr. Zalmerón's motion to withdraw his plea and remand to the trial court so that the court may disclose any relevant materials in the chambers file[11] and conduct further proceedings not inconsistent with this opinion.

*So ordered.*

---

[10] Mr. Zalmeron argues that if recusal is necessary, it would be improper for another Superior Court judge to be required to evaluate the testimony of the Superior Court's chief judge, and we should require appointment of a D.C. Court of Appeals judge to preside over the factfinding hearing. The government suggested at oral argument that it was "the more common practice" in such a circumstance to appoint a judge from the U.S. District Court for the District of Columbia. We leave it to the trial court to determine in the first instance which practice is appropriate if such reassignment becomes necessary.

[11] The trial court agreed with the government that its recollection was independent of the documents in the chambers file, which may mean there are no relevant materials to disclose. If, however, the trial court determines that the file does contain "written materials such as will refresh or confirm recollection," they "should be placed in evidence in the usual manner." *Downey*, 91 F.2d at 233.