# District of Columbia
# Court of Appeals

No. 15-CM-353

JACQUELINE FREY,

                           Appellant,

    v.

UNITED STATES,

                           Appellee.



CMD-11078-14

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: THOMPSON and MCLEESE, *Associate Judges*; and KING, *Senior Judge*.

## JUDGMENT

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the appellant's conviction is vacated, and the matter is remanded for further proceedings.

                For the Court:

                JULIO A. CASTILLO
                Clerk of the Court

Dated: May 5, 2016.

Opinion by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-353

JACQUELINE FREY, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-11078-14)

(Hon. Patricia A. Broderick, Motions Judge)
(Hon. Ann O'Regan Keary, Trial Judge)

(Argued February 9, 2016                    Decided May 5, 2016)

*Jeffrey L. Light* for appellant.

*Daniel J. Lenerz*, Assistant United States Attorney, with whom *Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman* and *John P. Mannarino*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

MCLEESE, *Associate Judge*:  After a bench trial, appellant Jacqueline Frey

was convicted of unlawful entry, in violation of D.C. Code § 22-3302 (2015

Supp.). Ms. Frey argues that she was entitled to a jury trial. We agree, and we therefore vacate Ms. Frey's conviction and remand for further proceedings.

**I.**

In pertinent part, the evidence at trial was as follows. At about 6:30 a.m. on June 24, 2014, Ms. Frey was found asleep at an employee's desk in a restricted area of the Library of Congress's Adams Building. The Adams Building is generally open to the public from 8:30 a.m. to 4:30 p.m. To get to the desk where she was sleeping, Ms. Frey had to pass through areas that are not at any time open to the public.

Ms. Frey testified that she entered the Adams Building at about 3:30 p.m. on June 23, 2014. She went to the reading room and read for a couple of hours, but then she fell asleep. When she woke up, the building was closed and the lights were out. Ms. Frey started walking around the building, at one point walking through an underground tunnel to another Library of Congress building, the Jefferson Building. Eventually, Ms. Frey made her way to the office in which she was later arrested.

The trial judge found Ms. Frey guilty. Specifically, the trial judge found that Ms. Frey was in an area of the Library of Congress that was not open to the public at any time and that Ms. Frey knew that her presence there was against the will of the Library of Congress. The trial judge did not credit Ms. Frey's denial of an intent to remain in the building.

## II.

In 2009, the unlawful-entry statute was divided into two parts. Omnibus Public Safety and Justice Amendment Act of 2009, D.C. Law 18-88, § 215, 56 D.C. Reg. 7413 (Dec. 10, 2009). Subsection (a) prohibits unlawful entry into "any private dwelling, building, or other property, or part of such dwelling, building, or other property." D.C. Code § 22-3302 (a)(1). Violations of subsection (a) are punishable by a fine, imprisonment for not more than 180 days, or both. *Id.* Subsection (b) prohibits unlawful entry into "any public building, or other property, or part of such building, or other property." D.C. Code § 22-3302 (b). Violations of subsection (b) are punishable by a fine, imprisonment for not more than six months, or both. *Id.* A defendant charged with an offense punishable by more than 180 days' imprisonment has a statutory right to a jury trial. D.C. Code § 16-705 (b)(1)(A) (2012 Repl.). Thus, a defendant charged under subsection (a)

has no statutory jury-trial right, but a defendant charged under subsection (b) has a statutory jury-trial right. *See generally Turner v. Bayly*, 673 A.2d 596, 597-602 (D.C. 1996) (defendants charged with offenses punishable by up to six months' imprisonment have statutory right to jury trial).

For reasons that are unclear, the information and amended information filed in this case do not specify which subsection Ms. Frey is accused of violating. Moreover, neither information contains an explicit allegation as to the public or private character of the building or area that Ms. Frey entered. Rather, the informations in pertinent part simply allege that Ms. Frey entered or attempted to enter the Adams Building of the Library of Congress. Ms. Frey demanded a jury trial, arguing that the Adams Building was a public building and that she therefore had been charged with violating subsection (b). The United States contended, however, that Ms. Frey was charged with violating subsection (a), because she entered a private area of the Adams Building and did so at a time when the building was entirely closed to the public. Agreeing with the United States, the motions judge concluded that Ms. Frey did not have a right to a jury trial.

## III.

Ms. Frey does not challenge the adequacy of the charging documents or the sufficiency of the evidence. Rather, she argues only that she has a right to a jury trial because she was charged with unlawfully entering the Adams Building, which is a public building. The United States does not dispute that, generally speaking, the Adams Building is a public building. Rather, the United States argues that Ms. Frey's conduct nevertheless falls under subsection (a), because (1) Ms. Frey entered an area of the Adams Building that was not open to the public, and (2) Ms. Frey did so at a time when the Adams Building was entirely closed to the public. We conclude that Ms. Frey has the better of the argument.

The terms "public" and "private" are not defined for purposes of the unlawful-entry statute. The question whether a given building is public or private can be difficult and can depend heavily on the context in which the question arises. *See generally* Annotation, *What [are] "Public Buildings"*, 19 A.L.R. 543 (Westlaw database updated May 2016) ("The construction of the term 'public building' depends almost entirely on the context in which it is used, and as this varies in practically every case, no general rule as to the meaning of the term can be formulated."). The parties in this case, however, do not dispute that, generally

speaking, the Adams Building is a public building for purposes of the unlawful-entry statute. We accept that premise without deciding the question. *Cf., e.g.*, *District of Columbia v. Washington Home Ownership Council*, 415 A.2d 1349, 1353 & n.11 (D.C. 1980) (en banc) (declining to decide issue that parties did not dispute). Rather, we decide the question the parties do dispute: Does a defendant who unlawfully enters a private area of a public building, or a public building at a time when the building is closed to the public, violate subsection (a) or subsection (b)? We decide that question of law de novo. *Zalmeron v. United States*, 125 A.3d 341, 346 n.5 (D.C. 2015).

We begin by looking to the language of subsection (a) and subsection (b). *See, e.g.*, *Rodriguez v. District of Columbia*, 124 A.3d 134, 146 (D.C. 2015) ("We first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning.") (internal quotation marks omitted). As previously noted, subsection (a) prohibits unlawful entry into "any private dwelling, building, or other property, or part of such dwelling, building, or other property." Subsection (b) prohibits unlawful entry into "any public building, or other property, or part of such building, or other property." The parties have treated this case as involving a building. Moreover, the parties do not appear to dispute that the term "private" in subsection (a) modifies at least the first use of the

term "building." Accepting these premises, our inquiry reduces to the following question: Did Ms. Frey enter a "public building" or a part of "such" a building, or did she instead enter a "private building" or a part of "such" a building?

To answer that question, we must first construe the word "such" in the phrase "such building." Principles of ordinary language suggest that "such" refers to the public or private character of the building as previously indicated in the applicable subsection. *See Nieves v. United States*, 82 U.S. App. D.C. 4, 5, 160 F.2d 11, 12 (1947) ("The word 'such' is restrictive in its effect and obviously relates to an antecedent. In its context here, it refers to a specific kind of service [--] not just any active service [--] previously mentioned in the statute."); *United States v. Ashurov*, 726 F.3d 395, 398 (3d Cir. 2013) ("'[S]uch' means of the character, quality, or extent previously indicated or implied.") (internal quotation marks omitted). So understood, subsection (a) prohibits unlawful entry into a private building or a part of a private building, and subsection (b) prohibits unlawful entry into a public building or a part of a public building. In light of the United States's acknowledgement that the Adams Building is a public building rather than a private building, it seems to follow that Ms. Frey entered a public building, as well as various parts of a public building, and did not enter a private

building or any part of a private building. Ms. Frey's conduct therefore appears to have violated subsection (b), rather than subsection (a).

## A.

The United States contends, however, that Ms. Frey's conduct falls under subsection (a) because Ms. Frey entered a private area of a public building. In support of that contention, the United States reasons as follows: (1) the District of Columbia Council subdivided the unlawful-entry statute in 2009 in order to preserve a jury-trial right in unlawful-entry prosecutions that raise potential First Amendment issues; (2) although this court's unlawful-entry cases protect First Amendment interests by requiring a heightened showing in prosecutions for entry into public areas of public buildings, no such showing is required in prosecutions for entry into private areas of public buildings; and (3) the amended unlawful-entry statute thus should not be understood to require a jury trial in prosecutions for entry into private areas of public buildings. Our principal difficulty is with the last step in this reasoning. If the Council had intended to tailor the jury-trial right precisely to prosecutions implicating First Amendment concerns, the legislature presumably would have chosen language reflecting that intent. *Cf., e.g.*, *Riggs Nat'l Bank of Washington, D.C. v. District of Columbia*, 581 A.2d 1229, 1237

(D.C. 1990) ("[I]f the Council had meant what the [appellants] now say it meant, it surely could have said so.").

The Council might reasonably have been reluctant to try to codify this court's cases addressing First Amendment issues arising in unlawful-entry prosecutions. By preserving a jury-trial right in all prosecutions for unlawfully entering public buildings, the Council apparently chose instead to draw a more easily administrable line. In such circumstances, we must adhere to the broader language the Council chose, and we may not artificially limit the statute to the particular circumstances that gave rise to the Council's concern. *Cf., e.g.*, *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 245-48 (1989) (rejecting argument that federal racketeering statute should be interpreted as limited to organized crime; although organized crime "was without a doubt Congress' major target," Congress adopted "commodious language capable of extending beyond organized crime," and Congress was concerned that it would not be practical "precisely and definitively to define organized crime") (internal quotation marks omitted); *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 115 (1988) ("It is not the law that a statute can have no effects which are not mentioned in its legislative history, and the text of the present statute plainly embraces criteria of more general application.").

Moreover, there is no specific indication in the legislative history that the Council intended to tailor the unlawful-entry statute precisely to First Amendment doctrine by subdividing buildings into public and private areas and preserving a jury-trial right only for defendants prosecuted for unlawfully entering a public area of a public building. To the contrary, testimony presented to the Council appears to reflect the understanding that the jury-trial right would be tied to the public character of the building as a whole, not to specific areas within a building. *See* D.C. Council, Report on Bill No. 18-151 at 177 (June 26, 2009) (Statement of Jeffrey A. Taylor, U.S. Attorney for D.C., at 4 (bill divides unlawful entry into two parts, one applicable to public buildings and the other applicable to private buildings; bill retains jury-trial right for "unlawful entry into public buildings, such as the Wilson Building or the Randall [S]chool")); *id.* at 52 (Letter from Adrian M. Fenty, Mayor, to Vincent C. Gray, D.C. Council Chairman, at 1 (Feb. 6, 2009) ("This legislation . . . is the culmination of a partnership between my Administration and the United States Attorney for the District of Columbia . . . .")).

The structure of section 22-3302 further argues against subdividing public buildings into private and public areas for current purposes. Subsection 22-3302 (a) addresses private buildings and subsection 22-3302 (b) addresses public buildings. Requiring unlawful entry into private areas of public buildings to

be prosecuted under the subsection addressing private buildings, rather than the subsection addressing public buildings, would "end-run the statute's careful line-drawing and thwart the structure . . . of the statute." *District of Columbia v. Department of Labor*, Nos. 14-5132 & -5133, 2016 WL 1319453, at \*6 (D.C. Cir. Apr. 5, 2016); *see generally, e.g.*, *Nken v. Holder*, 556 U.S. 418, 431 (2009) ("[T]he Court frequently takes Congress's structural choices into consideration when interpreting statutory provisions.").

Finally, we are not persuaded by the United States's reliance on *Ortberg v. United States*, 81 A.3d 303 (D.C. 2013). The defendant in *Ortberg* was prosecuted under section 22-3302 (a) for unlawfully entering a room in the W Hotel. *Id.* at 305. In describing the factual circumstances of the case, this court stated that the defendant "mov[ed] from the publicly accessible lobby of the W Hotel into the restricted event space of Studio One." *Id.* at 306. The United States contends that this statement reflects a distinction between private and public areas of a building. The statement, however, was not directed at the elements of unlawful entry or the scope of the jury-trial right. Moreover, what we said in *Ortberg* about the elements of unlawful entry and the scope of the jury-trial right points against the United States's contention, because our focus was on the public or private character of the building as a whole, not on more specific areas of buildings.

Specifically, we stated that (1) section 22-3302 distinguishes between entry into public buildings and entry into private buildings, (2) the jury-trial right extends to cases involving entry into public buildings but not cases involving entry into private buildings; and (3) the "private nature of the W Hotel is not contested." *Id.* at 307 n.3.

In sum, we conclude that a defendant charged with unlawfully entering a public building, or any part of a public building, has the right to a jury trial, even if the defendant's entry was into a private area of a public building.

**B.**

The United States also argues that Ms. Frey's conduct falls under subsection (a) because Ms. Frey entered areas of the Adams Building at a time when the building was completely closed to the public. For reasons similar to those that we have already discussed, we conclude that a defendant charged with unlawfully entering a public building, or any part of a public building, has a right to a jury trial even if the building or part thereof was closed to the public at the time of the entry.

First, section 22-3302 does not impose any temporal limitation, nor does it contain any other language suggesting that entering a public building at a time when the building is closed is prosecutable under the subsection addressing private buildings. We would not lightly infer such a time limit. *Cf., e.g.*, *Williams v. Paul*, 945 A.2d 607, 613 (D.C. 2008) ("There is no basis for reading such a [time] limitation into the unambiguous language of Rule 5(b). We decline to imply a time limitation on a tenant's counterclaim when it would be contrary to the plain language of the rule.") (citation, alterations, and internal quotation marks omitted).

Second, if the Council had intended to limit the jury-trial right to prosecutions for unlawfully entering public buildings that were open to the public at the time of entry, the Council presumably would have chosen language reflecting that intent. *See Riggs Nat'l Bank*, 581 A.2d at 1237. In other contexts, the Council has been explicit when making time a relevant component of criminal statutes. *See, e.g.*, D.C. Code § 22-1321 (d) (2015 Supp.) (prohibiting making "unreasonably loud noise between 10:00 p.m. and 7:00 a.m."); D.C. Code § 22-2752 (a)(1)(A) (2015 Supp.) (prohibiting protestors from targeting residences between 10:00 p.m. and 7:00 a.m.); D.C. Code § 22-3226.08 (3) (2012 Repl.) (prohibiting telephone solicitation between 9:00 p.m. and 8:00 a.m.); *cf. Whitfield v. United States*, 543 U.S. 209, 216 (2005) ("Congress has included an express

overt-act requirement in at least 22 other current conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so."). Moreover, legislatures in other jurisdictions have been explicit when they intended their unlawful-entry statutes to turn on time or on whether the building at issue was open to the public. *See, e.g.*, Md. Code Ann., Crim. Law § 6-409 (West, Westlaw through specified Chs. of 2016 Reg. Sess.) (separately addressing refusal to leave public building at time when building is regularly closed to public and refusal to leave public building during regular business hours); Cal. Penal Code § 602(q) (West, Westlaw through specified Chs. of 2016 Reg. Sess. and 2015-2016 2nd Extraordinary Sess.) (prohibiting refusal to leave "a public building of a public agency during those hours of the day or night when the building is regularly closed to the public").

Third, the legislative history contains no suggestion that the Council intended to tie the jury-trial right to whether the public building at issue, or part thereof, was open to the public at the time of entry. We therefore conclude that a defendant charged with unlawfully entering a public building at a time when the building is closed to the public has a right to a jury trial.

**IV.**

The parties do not dispute that if Ms. Frey was entitled to a jury trial, then the conviction should be vacated. That would seem to eliminate any necessity for this court to decide the issue. Counsel for Ms. Frey, however, contends that this court cannot properly accept the United States's concession, but rather must independently decide whether the denial of Ms. Frey's right to a jury trial requires this court to vacate the conviction. Given that the United States did not confess error, but rather defended the judgment on certain grounds but not others, we conclude that we may appropriately accept the United States's concession that the denial of a jury trial in this case, if erroneous, requires that the conviction be vacated. *See, e.g.*, *Tuckson v. United States*, 77 A.3d 357, 366 (D.C. 2013) ("[A]lthough we will make our own inquiry in the unusual circumstance when the government does not defend a judgment on the merits and effectively concedes error, we are not presented with that scenario here. Rather, here the government urges affirmance and has selected the arguments it believes are best suited to achieve that end."; declining to affirm trial court's order on grounds United States did not argue) (internal quotation marks, alterations, and citations omitted); *Rose v. United States*, 629 A.2d 526, 534-35 (D.C. 1993) ("It is one thing if the government altogether throws in the towel by joining in appellant's request for

reversal. In that case, the court, as we have seen, is obliged to check out the capitulation by examining the record; the court has an institutional role as a failsafe against abandonment of the prosecutorial function. But it is quite another thing, when the government seeks affirmance based on reasonable appellate strategy, for this court to scrutinize whether the government [--] while undertaking its usual role [--] is doing so well enough."; declining to address exclusionary-rule issue where government chose to argue lack of standing as basis for affirmance rather than pressing exclusionary-rule argument).

We vacate Ms. Frey's conviction and remand for further proceedings.

*So ordered.*