ORDER

PER CURIAM.
Appellants’ petition for rehearing en banc and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon consideration of the foregoing, it is
ORDERED that the petition be denied.
PILLARD, Circuit Judge, and EDWARDS, Senior Circuit Judge, concurring in the denial of rehearing en banc:
The panel opinion has none of the ambition that Judge Kavanaugh, dissenting from denial of rehearing en banc, attributes to it. It does not alter the law of probable cause or the law of qualified immunity. The panel agrees with virtually everything the dissent says about the law. Our disagreement is about the facts.
I.
The dissent accuses us of establishing new rules of law. We have done no such thing. In fact, we view the law the same way the dissent does.
1. The dissent asserts that we created a new rule “that officers are required to believe the statements of suspected trespassers who claim that they have permission to be on the property.” Dissent 110. It contends that our opinion obliges officers to accept suspects’ implausible protestations of innocence and ignore other, cir- *97 eumstantia! evidence of culpability. Id. at 106-07. That is not the law, nor did we so hold.
Rather, we agree with the dissent that, if the facts of which officers are awar'e and the reasonable iriferences that arise from those facts cast doubt on & suspect’s story; officers need not credit the suspect. See id. at 107-08, 110-11. Indeed, our opinion specifically acknowledges that officers are “entitled to discredit” a suspect’s claims of an “innocent explanation for entry into a house in the face of conflicting evidence,” Wesby v. District of Columbia, 765 F.3d 13, 21 n. 4 (D.C.Cir.2014) (citing Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir.2005)); if other facts give rise to probable cause, the officer may arrest, “notwithstanding exculpatory statements from the suspect,” id. (quoting Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir.2002)).
We also acknowledged that circumstantial evidence may “make it reasonable to infer” that a suspect has a culpable state of mind. Id. at 22. To reach that conclusion, officers do not need trial-worthy evidence. We expressly noted that “[p]robable cause ‘does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.’ ” See id. at 20 (quoting Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). The dissent agrees. See Dissent 105 (“To have probable cause to arrest, a police officer does not need proof beyond a reasonable doubt, or even by a preponderance of the evidence, that an individual committed a crime.”).
Taking these points together, so long as there is evidence giving rise to probable cause—even if that evidence is only circumstantial and short of preponderant— officers may lawfully arrest, -no matter what a suspect claims in his or her own defense. There is nothing novel about our view. The dissent’s sampling of -cases from across the circuits confirms that it is widely held. See id. at 107-08.
2. The dissent worries that our opinion erodes the protection qualified immunity provides officers who must make “on-the-spot credibility judgments” and quickly “resolve difficult mens rea questions.” Id. at 102, 107. Our first point of agreement should put the dissent at ease—officers are not-required to take suspects at their word when they deny their guilt. A second point also ought to assuage the dissent: If officers mistakenly, conclude that there is probable cause, they are nonetheless entitled qualified immunity if their mistake was reasonable. See Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). Our opinion does not ignore or weaken that important protection, which gives officers the necessary “breathing room” to perform their difficult, dangerous jobs and safeguard the public: Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011). It simply finds that a reasonable officer could not conclude, based on the information before these particular officers, that there was probable cause.
It is also worth noting that this case is quite unusual, in that the officers did not make any heat-of-the-moment judgment calls about the partygoers’ mens rea or whether they were telling the truth about having been invited. First, nothing about the investigation was rushed and nothing about the situation posed any imminent risk. The officers spent two hours on the scene calmly assessing the situation, J.A. 381, and more time back at the station deliberating over which charge to bring. (The officers originally processed the par-tygoers for unlawful entry, then dropped that charge and, after discussing the case with representatives of the Attorney General’s office, processed them for disorderly conduct, then dropped that charge as well. *98 J.A. 45-50.) Second, these defendants did not in fact make any determinations about the partygoers’ mindset, because they did not think either one mattered. See infra 100-01 &n.1.
II.
We and the dissent agree on two other clearly established points of law.
1. The dissent does not dispute our rather unexceptional statement that arresting officers need “at least some evidence that the arrestee’s conduct meets each of the necessary elements of the offense that the officers believe supports arrest.” Wesby, 765 F.3d at 26. When officers lack probable cause to believe that a necessary element of an offense is present, they lack probable cause to arrest. See id.; United States v. Christian, 187 F.3d 663, 667 (D.C.Cir.1999); accord Wright, 409 F.3d at 602 (“Whether any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue.”). The same is true when the only circumstances officers observe amount to conduct that is privileged by a defense.
- Setting aside for the moment its particular application here, the dissent seems to agree with that proposition as a legal matter. See Dissent 106-07, 109. The dissent quotes with approval a recent Second Circuit statement of the law that officers must accept a suspect’s defense if “ ‘the facts establishing that defense were so clearly apparent to the officers on the scene as a matter of fact, that any reasonable officer would have appreciated that there was no legal basis for arresting plaintiffs.’ ” Id. at 109 (quoting Garcia v. Does, 779 F.3d 84, 93 (2nd Cir.2015) (amended opinion)). Our decision fully comports with Garcia. Our own prior decisions and those of other courts are in accord. See Hutchins v. District of Columbia, 188 F.3d 531, 535 (D.C.Cir.1999) (en banc) (noting that a police officer may detain a minor for violating a, curfew law if the “police officer reasonably believes that an offense has occurred under the curfew law and that, no defense exists”); Tillman v. Wash. Metro. Area Transit Auth., 695 A.2d 94, 96 (D.C.1997) (acknowledging the “unusual” possibility of circumstances that, “while undoubtedly proving an unlawful act, nonetheless demonstrated- so clearly that the suspect lacked the required intent that the police would not even have probable cause for an arrest”); Estate of Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir.1999) (observing that the “law has been clearly established since--at least the Supreme Court’s decision in Carroll v. United States, [267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)], that probable cause determinations involve an examination of all facts and. circumstances within an officer’s knowledge at the time of an arrest,” which includes an arrestee’s “uncontroverted” defense).
2. In addition to .agreeing that officers need “some showing” of each element, Wesby, 765 F.3d at 22, we and the dissent agree that the key element in this case was whether the partygoers entered a place they knew or should have known was off limits. The dissent does not dispute, nor could it, that it is no crime for a person to enter premises without authorization if that person has a bona fide belief that she is permitted to enter. It frames the issue well:
It is undisputed .that the partiers were on private property without permission from an owner or renter, and without other lawful authority. Therefore, this is a case where the actus reus of the crime was complete. The sole issue from the perspective of a reasonable police officer was whether the partiers *99 had the necessary mens rea to commit the crime of trespassing. If the partiers believed that they had permission from a lawful owner or renter to use the house, then the partiers did not commit the offense of trespassing under D.C. law.
Dissent 106.
At the time of the challenged arrests, the. law in the District of Columbia had, indeed, long been clear that in unlawful entry cases the suspect’s state of mind matters. See, e.g., Artisst v. United States, 554 A.2d 327, 330 (D.C.1989) (at firming because the evidence showed “appellant’s intention to be on the premises contrary to [the owner’s] will”); Culp v. United States, 486 A.2d 1174, 1177 (D.C. 1985) (affirming because “officers could reasonably conclude that appellant knowingly entered ‘against the will of ... the person lawfully in charge’ ”). By the same token, it had long been clear that if a person has “a bona fide belief’ that he is permitted to enter, “he lacks the element of criminal intent required by” the law “and is not guilty of unlawful entry.” Smith v. United States, 281 A.2d 438, 439 (D.C.1971); see McGloin v. United States, 232 A.2d 90, 91 (D.C.1967).' Although the Ortberg case, which came down after these arrests, stated more precisely the culpablé state of mind required to prove unlawful entry, Ortberg simply articulated what “decades of case law” had already made “clear”—that the government must “establish that the defendant knew or should have known that his entry was unwanted.” Ortberg v. United States, 81 A.3d 303, 307 (D.C.2013). Indeed, the model jury instruction for unlawful entry going back to at least 1993 describes the required state of mind in those terms. See Criminal Jury Instructions for the District of Columbia, No. 4.36 (4th ed. 1993) (“The government must prove beyond a reasonable doubt not only that the defendant entered against the will of the lawful occupant of . the premises, but also that s/he knew, or should have known, that s/he was entering against the will of the occupant.”).
III.
The only criticism we have of the dissent’s view of the' law is that it would reheve the officers of their burden to justify an arrest by effectively presuming probable cause if nothing‘in the record forecloses it. The dissent commits that error in sketching three scenarios, two that it describes as supported by probable cause, and one that it acknowledges is’not. Dissent 108-09. The first possibility the dissent identifies is that, although Peaches invited them, the partygoers knew or might have known that she was not renting the house and so could not lawfully invite them there. A second possibility is that the partygoers might have lied to the police when they said that Peaches invited them, and that Peaches then made up a corresponding lie to give her friends cover. In the third scenario, the partygoers told the truth that Peaches invited them, and they had no reason to suspect that she was not authorized to do so. The dissent contends that each scenario is possible,- and that “the officers did not have a way-to rule out either of the first two scenarios.” Id. at 109.
We have two responses. First, there is no evidence in the record that suggests that the partygoers and Peaches cooked up a plot to mislead the police, and the dissent points to none. Instead, the dissent simply speculates, “[w]ho knows” whether or how they might have coordinated? Id. at 108. -Certainly' not the officers. They never—neither at the time of the arrest nor during the subsequent litigation— pointed to a circumstance tending ’to show *100 that the partygoers and Peaches were colluding.
' Second, and more fundamentally, in suggesting that a lack of information—a “who knows?” gap—could suffice to support probable cause, the dissent advocates a position that would impermissibly shift the burden of discerning probable cause. Officers may not do what the dissent does— posit that a person is up to no good and then ask whether there is clear, reason to rule out any theoretical wrongdoing. See Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (“Whether probable cause, exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time, of the arrest.”); Adams, 407 U.S. at 148, 92 S.Ct. 1921 (“Probable cause to arrest depends ‘upon whether, at the moment the arrest was made ... the facts and circumstances within (the arresting officers’) knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.)’ ” (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The probable cause requirement, even as flexible and contextual as it appropriately is, authorizes arrest only when the facts and circumstances give officers reason to believe that someone is violating or has violated the law.
The bare, unsupported possibility that an officer might have disbelieved the par-tygoers when they said they had been invited is not ground for arrest—nor for qualified immunity. Contra Dissent 111. The dissent contends that an • officer’s doubts about a suspect’s credibility count as “information” that can controvert evidence dissipating probable cause. Id. at 106, 111. We do not disagree with that proposition as a legal matter. When officers actually doubt a suspect’s credibility, and when those doubts fairly arise from their observations and the information available to them, officers may take their doubts into account when assessing whether the totality circumstances support probable case. See, e.g., McComas v. Brickley, 673 F.3d 722, 726-27 (7th Cir.2012); Wright, 409 F.3d at 603. The officers in this ease, however, did not actually doubt that the partygoers were telling the truth when they said Peaches invited them. In fact, the officers did not think the party-goers’ credibility mattered at all. They did not think it mattered because they believed—incorrectly and unreasonably— that the partygoers’ state of mind was legally irrelevant.
IV.
Our disagreement with the dissent comes down to our case-specific assessment of the circumstantial evidence in the record.
We found that an officer could not conclude—not even reasonably, though mistakenly—that the partygoers had a culpable state of mind. It is not surprising that the record, consisting of what the officers took note of at the time, lacks evidence of what the partygoers knew, or even what they ought to have known, about whether they had been legitimately invited into the house. At the time of the arrest, and even in this litigation, the defendants misunderstood the clearly established elements of unlawful entry. They believed (erroneously) that it did not matter what the party-goers knew or did not know about their permission to be at the premises. Once the owner told the officers he had not yet rented the house to Peaches and he had *101 not allowed the guests to attend a party there, the officers believed they had all they needed.[1]
Of course, even though the defendant officers in this case did not seek to determine whether the partygoers themselves knew or should have known that they were not authorized to be present at the house, if the information known to the officers when they made the arrests nonetheless fairly suggested that the partygoers were or should have been aware that they were unwelcome, the arrests would have been lawful. See Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); United States v. Bookhardt, 277 F.3d 558, 565 (D.C.Cir.2002); United States v. Joyner, 492 F.2d 655, 656 (D.C.Cir.1974) (per curiam) (“[A]n arrest will be upheld if probable cause exists to support arrest for an offense that is not denominated as the reason for the arrest by the arresting officer.”). ' And if the facts in the record could at least arguably give rise to probable cause, the defendants would be entitled to qualified immunity. See Hunter, 502 U.S. at 227, 112 S.Ct. 534; Wardlaw v. Pickett, 1 F.3d 1297, 1304 (D.C.Cir.1993).
The dissent thinks an officer in the defendants’ position could reasonably believe there was probable cause. Dissent 108-09. For the reasons explained in our opinion, we disagree that the record here supports probable cause, either actually or arguably., That is the extent of our disagreement,. no more, no less. Our dispute— whether these particular defendants are entitled to qualified immunity on the plaintiffs Fourth Amendment claim—is entirely “fact-bound,” City & Cty. of San Francisco v. Sheehan, — U.S. —, 135 S.Ct. 1765, 1779, 191 L.Ed.2d 856 (2015) (Scalia, J., concurring in part and dissenting in part), and therefore hardly deserves the dissent’s doomsaying. As our nearly complete agreement with the dissent on the governing principles underscores, we did not invent or invert any law to reach the result in this case. And the thinness, of the record is quite anomalous, as it stems from the officers’ legal error at the scene. We accordingly concur in the denial of rehearing en banc.

. When opposing counsel asked Sergeant Sú-ber at his deposition if it mattered "whether or not [the partygoers] believed, based upon what Peaches told them, that they had the right to be there,” he answered, "Peaches nor the other individuals occupying that location did not have the right to be there.” J.A. 48; see id. at 129 ("Q: And so what I’m trying to understand is why did you reach that conclusion [that it was a lawful arrest] when you knew that Peaches had given them permission to be there? [Suber]; Because Peaches didn’t have permission to be there,”); see also id. at 99 (deposition testimony of Defendant Officer Parker explaining that Sergeant Súber decided to arrest everyone because the owner had said that nobody had his permission to be in the house).
Even in their summary judgment papers, the defendants continued to assert the irrelevance of the partygoers' mindset. The defendants acknowledged that "each of [the party-goers] admitted that they were social guests,” but stressed that "this statement is not material” because none of the plaintiffs owned the property and liability turns on "whether MPD Officers reasonably believed that the plaintiffs were not the owners and did not have a possessory interest in the property.” J.A. 59 (Defs.’ Resp. to Pis.’ Statement of Facts, ECF No. 30, Ex. 1 at 2). In their rehearing petition before this court as well, the defendants suggest that it somehow was not clearly established' that the offense of unlawful entry includes a state of mind requirement. See Pet. Reh’g En Banc 12 (contending that the panel erred because it "found the law clearly established 'that probable cause required some evidence that the Plaintiffs knew or should have known that they were entering against the will of the lawful owner’ ” (quoting Wesby, 765 F.3d at 27)). As discussed in the court’s opinion and in the text, supra 98-99, that is a misstatement of clearly established law.